UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PETER HOFFMAN, ET AL.                    CIVIL ACTION

VERSUS                                   NO: 13-5153

DAVID BAILEY                             SECTION: "A" (5)

### ORDER AND REASONS

Before the Court are two motions in this matter filed by Defendant David Bailey: **Motion to Dismiss (Rec. Doc. 3)** pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(4), 12(b)(5), 12(b)(6), and 12(f); and **Motion to Strike Plaintiffs' Affidavits and Exhibits (Rec. Doc. 22)**.  Both motions are opposed by Plaintiffs and are before the Court on the briefs without oral argument.

### I.  Background

Plaintiff Peter Hoffman is a citizen and resident of the state of California.  Plaintiff Susan Hoffman is a citizen and resident of the state of Louisiana.  Plaintiffs are married to each other, but legally separated and separately own various business entities.

Defendant David Bailey is a citizen and resident of the United Kingdom.  Defendant once worked in England as the Finance Director for SAP, Plc, a company for which Plaintiff Peter Hoffman was the Chief Executive Officer.

1

Plaintiff Susan Hoffman, through multiple business entities, owns property located at 807 Esplanade Avenue in New Orleans, Louisiana (the Property).  The rehabilitation of this Property has potentially qualified it for Louisiana historic rehabilitation tax credits.  These potential tax credits were assigned to a separate business entity owned by Plaintiff Peter Hoffman.

This defamation lawsuit stems from statements made by Defendant concerning Plaintiffs Peter and Susan Hoffman.  These statements were made in an email sent by Defendant to an employee of the Louisiana State Historic Preservation Office while Plaintiffs were in the process of applying for Louisiana historic rehabilitation tax credits on the Property.  The body of Defendant's email stated the following:

> I was interested to read that Peter and Susan Hoffman have applied for rehabilitation tax credits on 807 Esplanade, and have included them as revenue in accounts filed with the SEC. This appears to contradict other evidence which strongly indicates that Peter Hoffman and Susan Hoffman are the architects not of a building, but of a major economic fraud. http://stock-bb.com/seven-arts-pictures-plc-pink-sapx/ has several discussions on this matter. Who should I write to with the evidence I personally have that indicates that all the applications made by the Hoffmans are fraudulent, that the amounts claimed were probably not spent, and that some or all of the funds used to renovate the property were improperly diverted from SAP Plc by way of a transfer to a related party within 2 years of a SAP Plc becoming insolvent?[1]

---

[1]Rec. Doc. 1-3.

Plaintiffs filed this lawsuit against Defendant alleging that the statements made in the email were defamatory, causing harm to Plaintiffs.  Defendant filed a Motion to Dismiss (Rec. Doc. 3) to have Plaintiffs' lawsuit against him dismissed on several different grounds under Rule 12 of the Federal Rules of Civil Procedure.  The Court will examine each of these Rule 12 grounds for dismissal in turn.

**II.  <u>Analysis</u>**

<u>a) Rule 12(b)(4) Insufficient Process</u>

Defendant moves for the Court to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(4) of the Federal Rules of Civil Procedure.  A motion to dismiss under Rule 12(b)(4) requires the defendant to establish insufficient process under Rule 4 of the Federal Rules of Civil Procedure.[2]  Under Rule 4(b), a "summons shall be signed by the clerk, be under the seal of the court, contain the name of the court and the names of the parties, [and] be directed to the defendant..."[3]  Rule 4(c) mandates that a summons be served on the defendant with a copy of the complaint.[4]

Defendant raises his Rule 12(b)(4) defense on the grounds that he was not served with a summons.  Plaintiffs filed their complaint on July 23, 2013.  Service of the complaint was made on

---

[2]Fed. R. Civ. P. 12(b)(4).

[3]Fed. R. Civ. P. 4(b).

[4]Fed. R. Civ. P. 4(c).

3

Defendant on August 5, 2013.  Defendant filed the instant Motion to Dismiss on August 26, 2013.

While service on Defendant at the time he filed the instant motion consisted of only the complaint, Plaintiffs served Defendant a second time on September 25, 2013, including both the complaint and the summons.  The Court finds this follow-up service sufficient to avoid dismissal of this action under Rule 12(b)(4).

### b) Rule 12(b)(5) Insufficient Service of Process

Defendant moves for the Court to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.  A motion to dismiss under Rule 12(b)(5) requires the defendant to establish insufficient service of process under Rule 4 of the Federal Rules of Civil Procedure.[5]  Rule 4(f) provides that service upon an individual in a foreign country may be carried out by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention.[6]  Rule 4(f) further states that if there is no internationally agreed means, or if an international agreement allows but does not specify other means, service may be carried out by other methods reasonably calculated to give notice.

---

[5] Fed. R. Civ. P. 12(b)(5).

[6] Fed. R. Civ. P. 4(f).

4

Defendant raises his Rule 12(b)(5) defense on the grounds that he was not properly served in accordance with the service procedures laid out in the Hague Convention.  The Hague Convention authorizes certain procedures for effecting service abroad, which involve passing documents through a designated Central Authority of the State.  However, as Plaintiffs correctly point out, article 10 of the Hague Convention states that it "shall not interfere with . . . the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination."

In this case, service on Defendant was performed by a registered United Kingdom process server.  The Court finds that this method of service is both in compliance with Rule 4(f) and is permitted under the Hague Convention.  As such, Defendant is not entitled to dismissal of this action under Rule 12(b)(5).

c) Rule 12(b)(2) Lack of Personal Jurisdiction

Defendant moves for the Court to dismiss Plaintiffs' complaint under Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction.[7]  A federal court sitting in diversity must satisfy two requirements to exercise

---

[7] Fed. R. Civ. P. 12(b)(2).

personal jurisdiction over a nonresident defendant.[8]  First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment.[9]  The limits of the Louisiana long-arm statute are coextensive with constitutional due process limits.[10]  Therefore, the relevant inquiry is whether jurisdiction comports with federal constitutional guarantees.[11]

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state; and (2) the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice."[12] The defendant's connection with the forum state must be such that

---

[8]*Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).

[9]*Id.* (*citing Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999)).

[10]*Jackson v. Tanfoglio Giuseppe, SRL*, 615 F.3d 579, 584 (5th Cir. 2010) (*citing Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)).

[11]*Id.*

[12]*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

6

he "should reasonably anticipate being haled into court" there.[13]

Minimum contacts may give rise to either "specific" jurisdiction or "general" jurisdiction.[14]  Specific jurisdiction exists when a plaintiff's cause of action arises from, or is related to, the nonresident defendant's minimum contacts in the forum state.[15] General jurisdiction exists if the defendant has engaged in "continuous and systematic" activities in the forum state.[16]

When the court does not hold an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction.[17]  Where facts are disputed between the parties, the plaintiff presenting a prima facie case is entitled to have the conflicts resolved in his favor.[18]  If the plaintiff makes a prima facie case that minimum contacts exist, the defendant has the burden of making a "compelling case" that the exercise of jurisdiction would be unfair so as to offend traditional notions

---

[13]*Id.* (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

[14]*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8-9 (1984).

[15]*Id.* at 414 n.8.

[16]*Id.* at 415.

[17]*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999).

[18]*Id.*

of fair play and substantial justice.[19]

With regard to Defendant's burden of showing that jurisdiction over him would be unfair, a court may consider the following factors:

> (1) the burden upon the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.[20]

Defendant argues that his contacts with the forum are insufficient for the Court to exercise specific jurisdiction over him. Defendant contends that he has never been to Louisiana, has never owned property in Louisiana, and has never conducted business in Louisiana. Defendant contends that the entire case stems from a four-month stint during which he worked under Peter Hoffman in the United Kingdom. As a result, Defendant argues that jurisdiction "would most likely be appropriate there, if appropriate anywhere."

Defendant also argues that for the aforementioned reasons, the Court's exercise of jurisdiction over him would offend traditional notions of fair play and substantial justice. In furtherance of this assertion, Defendant argues that he had a

---

[19]*Id.*

[20]*Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990) (*citing Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

reasonable expectation that his communication to a Louisiana governmental entity would be privileged and not subject him to liability for defamation in a Louisiana court.[21]  Defendant also contends that the exercise of jurisdiction would offend due process because of potential differences between Louisiana law and the law of the United Kingdom.

Plaintiffs on the other hand argue that Defendant's contact with Louisiana are sufficient to confer jurisdiction over him. They contend that the email allegedly sent into the forum is a proper basis for specific personal jurisdiction over Defendant.

The Fifth Circuit has stated, "It is well settled that specific jurisdiction may arise without the nonresident defendant's ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum."[22]  Consistent with this notion, the Fifth Circuit has found a mere telephone call into the forum sufficient for providing the minimum contacts needed to justify personal jurisdiction over the nonresident who placed the call.[23]

The Fifth Circuit has also held that "when the actual

---

[21]The Court notes that this argument goes towards the merits of Plaintiffs' defamation claim.

[22]*Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987)).

[23]*Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 332-34 (5th Cir. 1982).

content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."[24]  In such circumstances, the Fifth Circuit found that a defendant is purposefully availing himself of "the privilege of causing a consequence" in the forum state.[25]

The Court finds that Defendant has sufficient minimum contacts with the forum for the Court to exercise specific personal jurisdiction over him.  The email Defendant allegedly sent to the Louisiana state agency purposefully established a connection with the forum.  Further, the contents of this email gave rise to the defamation claim, an intentional tort cause of action sufficient to constitute purposeful availment.

The Court finds further support of Defendant's sufficient forum contacts by applying the *Calder* "effects test."  In *Calder*, the Supreme Court upheld specific personal jurisdiction over nonresident defendants who published an allegedly libelous story in a nationwide publication.[26]  The Supreme Court found that the defendants had "expressly aimed" their tortious conduct towards the forum state because they knew the brunt of harm caused by their conduct would be felt in the forum state, where plaintiff

---

[24]*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

[25]*Id.*

[26]*Calder v. Jones*, 465 U.S. 783 (1984).

lived and worked.[27]  Under these circumstances, the defendants
could reasonably anticipate being haled into court in the forum
state to answer for the truth of their statements in the
publication.[28]

The Fifth Circuit has taken a restrictive stance when
applying the Calder effects test, finding that a plaintiff's mere
residence in the forum and suffering the brunt of harm there is
insufficient to support jurisdiction under *Calder*.[29]  The Fifth
Circuit requires that for a plaintiff to invoke *Calder*, "the
sources relied upon and activities described in an allegedly
defamatory publication should in some way connect with the
forum."[30]  Furthermore, the Fifth Circuit has found that the
defendant must have knowledge of the particular forum in which a
potential plaintiff will bear the brunt of the harm.[31]  And
finally, the Fifth Circuit has discussed *Calder* in the Internet
context, finding that proof is required to show that the
nonresident defendant's Internet activity is expressly directed

---

[27]*Id.* at 789-90.

[28]*Id.* at 790.

[29]*Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002).

[30]*Id.* (*citing Reynolds v. International Amateur Athletic Federation* 23 F.3d 1110 (6th Cir.1994)).

[31]*Id.* (*citing Calder v. Jones*, 465 U.S. 783, 789 (1984)).

at or directed to the forum state.[32]

The Court finds that these requirements the Fifth Circuit has imposed to restrict the application of the *Calder* effects test have all been met and that the test is satisfied under the facts of this case.  Defendant's alleged email was directed at the Louisiana forum, where it would foreseeably cause harm to Plaintiffs by preventing them from obtaining certain tax credits. The fact that Defendant's communication was knowingly sent directly to a Louisiana agency provides a clear connection with the forum.  The *Calder* effects test supports a finding of jurisdiction over Defendant.

In *Wien Air Alaska, Inc. v. Brandt*,[33] the Fifth Circuit addressed an argument similar to that made by Defendant regarding the source of his relationship with Plaintiffs.  In that case, the German defendant's contacts with the Texas forum related to and developed out of an ongoing business relationship between the parties that had been established in Germany.[34]  The Fifth Circuit held: "Even if the parties formed their relationship in Germany, however, a single act by [the defendant] toward Texas that gives rise to a cause of action by [the plaintiff] can

---

[32]*Id.* (*citing Young v. New Haven Advocate*, 315 F.3d 256, 258 (4th Cir.2002)).

[33]*Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999).

[34]*Id.* at 211.

support a finding of minimum contacts."[35]

Next, the Court examines whether the exercise of jurisdiction over Defendant would offend traditional notions of fair play and substantial justice.  The Court recognizes that litigating in Louisiana would place a burden on Defendant, a nonresident alien.  However, this inconvenience would likewise be felt by Plaintiffs in forcing them to litigate in the United Kingdom.  Furthermore, the Fifth Circuit has stated that "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant."[36] The Court finds that Defendant has not met his heavy burden in showing that the exercise of personal jurisdiction over him would be unfair.

Having found that Defendant is subject to specific personal jurisdiction of this Court, Defendant is not entitled to dismissal under Rule 12(b)(2).

d) Rule 12(b)(3) Improper Venue

Defendant moves for the Court to dismiss this case for improper venue, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure.[37]  Alternatively, Defendant seeks to have this

---

[35]*Id.*

[36]*Id.* at 215-16 (*citing Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)).

[37]Fed. R. Civ. P. 12(b)(3).

case transferred to a proper venue or convenient forum pursuant
to the common law doctrine of forum non conveniens.

Under 28 U.S.C.A. § 1391, venue is appropriate in "a
judicial district in which a substantial part of the events or
omissions giving rise to the claim occurred."  As the email
giving rise to this claim was allegedly sent to Louisiana, the
Court finds that this communication effectively took place in
Louisiana.[38]  Further, the alleged email pertained to Plaintiffs'
application for tax credits on a home located in the judicial
district encompassed by this Court.  For these reasons, the Court
finds this Court to be an appropriate venue for this dispute.

Having determined that this Court is an appropriate venue,
the Court will now address Defendant's argument under the common
law doctrine of forum non conveniens.  In resolving a forum non
conveniens issue "the ultimate inquiry is where trial will best
serve the convenience of the parties and the ends of justice."[39]
"The general principal of the doctrine 'is simply that a court
may resist imposition upon its jurisdiction even when
jurisdiction is authorized.'"[40]

---

[38]Defendant does not assert that a different venue within
Louisiana would be more appropriate.

[39]*Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796
F.2d 821, 827 (5th Cir. 1986) (*quoting Koster v. Lumbermen's Mut.
Casualty Co.*, 330 U.S. 518, 527 (1947)).

[40]*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342
(5th Cir. 1999) (*citing Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,

The first step in a forum non conveniens analysis is to determine whether there exists an adequate and available alternative forum for resolution of the dispute.[41]  The second step of the forum non conveniens inquiry involves the balancing of public and private interest factors.

> The private interest factors to be considered by the Court relate primarily to the convenience of the litigants. They include:
> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses;
> (3) the cost of attendance for willing witnesses;
> (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.
>
> The public interest factors relevant to the analysis are:
> (1) the administrative difficulties flowing from court congestion;
> (2) the local interest in having localized controversies decided at home;
> (3) the familiarity of the forum with the law that will govern the case;
> (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law.[42]

In balancing the public and private interest factors, the Fifth Circuit has emphasized that "no one private or public interest factor should be given conclusive weight."[43]

---

507 (1947)).

[41]*Syndicate 420 at Lloyd's London,* 796 F.2d at 828 (5th Cir. 1986) (*citing Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv*, 711 F.2d 1231, 1238 (5th Cir. 1983)).

[42]*Id.* at 831 (*citing Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)).

[43]*Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 342 (5th Cir. 1999).

Furthermore, the plaintiff's choice of forum is "entitled to great weight in the balancing of factors, and unless the balance strongly favors the defendants, the plaintiff's choice of forum should not be overturned."[44]

Defendant argues that the proper venue for this dispute lies in the United Kingdom.  As neither party addresses the adequacy of the United Kingdom as a forum for this dispute, the Court will proceed to the second step of the forum non conveniens inquiry.

Defendant asserts that United Kingdom law will be an issue in this dispute and that witnesses relevant to Plaintiffs' activities reside in the United Kingdom.  Further, Defendant argues that he will incur substantial fees in defending against Plaintiffs' claims in the current forum.

Plaintiffs argue that the witnesses in this case, aside from Defendant himself, are all located in or travel regularly to Louisiana.  Further, Plaintiffs argue that this case presents no need for the application of foreign law and that, accordingly, this Court is familiar with the law to be applied to the dispute. Finally, Plaintiffs argue that litigating in the United Kingdom would likely require them to post a bond for Defendant's attorneys fees, which militates against change of venue.

After considering the arguments of the parties, as well as

---

[44] *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 831 (5th Cir. 1986) (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

all of the relevant public and private interest factors, the
Court declines to overturn Plaintiffs' choice of forum.  While
the private interest factors weigh evenly for Plaintiffs and
Defendant, the public interest factors weigh more in favor of
Plaintiffs.  The Court does not find that the balance of factors
strongly favors Defendant to justify dismissal under forum non
conveniens.

        e) Rule 12(f) Motion to Strike under Louisiana Code of Civil
Procedure Article 971

        Defendant has filed a special motion to strike under Article
971 of the Louisiana Code of Civil Procedure.[45]  Article 971 is
Louisiana's anti-SLAPP statute (Strategic Lawsuit Against Public
Participation), which was enacted to protect the constitutional
right of free speech and encourage continued participation in
matters of public significance.[46]  The article is construed
broadly to allow dismissal of actions that thwart this goal.[47]
Article 971 states, in pertinent part:

>        A cause of action against a person arising from any act
>        of that person in furtherance of the person's right of
>        petition or free speech under the United States or
>        Louisiana Constitution in connection with a public issue
>        shall be subject to a special motion to strike, unless

---

[45]La. C.C.P. Art. 971.

[46]*Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 169
(5th Cir. 2009) (*quoting Thomas v. City of Monroe*, 833 So.2d
1282, 1286 (La. App. 2d Cir. 2002)).

[47]*Id.*

17

the court determines that the plaintiff has established a probability of success on the claim.[48]

Application of Article 971 utilizes a burden-shifting analysis.[49]  To be successful on a motion under Article 971, the defendant must first make a prima facie showing that Article 971 covers the activity underlying the suit.[50]  Specifically, "the defendant must establish that a cause of action against him arises from an act by him in furtherance of the exercise of his right of petition or free speech under the United States or Louisiana Constitution in connection with a public issue."[51]  If the defendant makes this showing, the burden then shifts to the plaintiff to demonstrate a probability of success on his claim.[52]

The Court will now determine whether Defendant has made a prima facie showing that Article 971 is applicable to this dispute.  Defendant asserts that his alleged actions were in furtherance of his right to free speech, which he is entitled to under the United States or Louisiana Constitution.  Further, Defendant argues that his communication to the Louisiana state

---

[48]La. C.C.P. Art. 971.

[49]*Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164, 170 (5th Cir. 2009).

[50]*Id.*

[51]*Id.* (*quoting Starr v. Boudreaux*, 978 So.2d 384, 388-89 (La. App. 1st Cir. 2007)).

[52]*Id.* (*quoting Starr*, 978 So.2d at 389 (La. App. 1st Cir. 2007)).

agency concerning the fiscal actions of the state constitutes communication pertaining to a public issue.

Plaintiffs argue that Defendant, as a foreign citizen, is not entitled to free speech rights under either the United States or Louisiana Constitutions.  Plaintiffs also argue that the issue of whether they were entitled to certain tax rebates is a private issue involving private persons rather than a public issue, as the statute requires.

Defendant is a citizen and resident of the United Kingdom.[53] The Court will first analyze Defendant's free speech rights as a nonresident alien under the United States Constitution.

In *Verdugo-Urquidez*, the Supreme Court addressed the issue of whether aliens are entitled to protections of the United States Constitution.[54]  The Supreme Court refused to endorse the view that every constitutional provision applies wherever the United States Government exercises its power.[55]  Rather, after analyzing the text and history of the phrase "the people" as found in the First,[56] Second, and Fourth Amendments, the Court

---

[53]Rec. Doc. 9-2, Bailey's affidavit, ¶ 1.

[54]*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990).

[55]*Id.* at 265-69.

[56]The First Amendment states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of *the people* peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const

concluded that "the people" protected by these amendments "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."[57]

The Supreme Court went on to acknowledge prior decisions in which it had afforded aliens certain constitutional rights.[58] However, the Supreme Court found that these cases "establish only that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country."[59]

In considering this Supreme Court precedent, it is clear that Defendant, a nonresident alien, is not entitled to First Amendment protections of the United States Constitution. Defendant's alleged actions giving rise to the defamation claim against him do not generate a sufficient connection with the United States to entitle him to First Amendment rights under *Verdugo-Urquidez*, nor has Defendant provided the Court with any other basis for determining that such a connection exists.[60]

---

amend. I (emphasis added).

[57]*Id.* at 265.

[58]*Id.* at 271.

[59]*Id.*

[60]Defendant argues that if the Court finds Defendant to have connections with this country and forum substantial enough to subject him to jurisdiction, then it should also find that he

Having determined that Defendant is not entitled to First Amendment rights under the United States Constitution, the Court next considers Defendant's contention that he is entitled to protection under Article I, Section 7 of the Louisiana Constitution.[61] Defendant fails to cite any legal authority for his contention that the protections of the Louisiana Constitution are afforded to a nonresident alien. Without any authority on which to rely, the Court declines to extend the protections of the Louisiana Constitution further than those of the United States Constitution.

Considering the Court's finding that Defendant is not entitled to free speech rights under either the United States or Louisiana Constitution, Defendant cannot make a prima facie showing that the alleged communications giving rise to this dispute were in furtherance of those rights. As such, Plaintiffs' cause of action is not subject to an Article 971

---

benefits from the relevant Constitutional protections. However, the Court notes the different standards used for these determinations. For example, sufficient minimum contacts for jurisdiction can be found without the defendant ever having been physically present in the United States. On the other hand, sufficient connections to entitle an alien to Constitutional protections requires that an alien be physically present in the United States *and* form a sufficient connection with the country.

[61]Article I, Section 7, "Freedom of Expression" states: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." La. Const. art. I, § 7.

special motion to strike.[62]

    <u>f) Defendant's Motion to Strike Plaintiffs' Affidavits and Exhibits (Rec. Doc. 22)</u>

    Defendant has filed a Motion to Strike Plaintiffs' Affidavits and Exhibits, moving the Court to strike portions of Plaintiffs' affidavits[63] submitted in support of Plaintiffs' Opposition to Defendant's Motions to Dismiss Complaint. Defendant argues that the affidavits and attached exhibits contain inadmissible evidence in the form of conclusory statements, statements lacking proper foundation, hearsay, and other grounds.

    The statements in the affidavits were not determinative of the Court's ruling on the various legals issues in Defendant's Motion to Dismiss.  Therefore, Defendant's Motion to Strike Plaintiffs' Affidavits and Exhibits is moot.

**III. <u>Conclusion</u>**

    Accordingly;

    **IT IS ORDERED** that Defendant's **<u>Motion to Dismiss (Rec. Doc.</u>**

---

[62]At the conclusion of Plaintiffs' opposition to Defendant's Article 971 special motion to strike, they assert that they are entitled to attorney's fees pursuant to Article 971(B).  If Plaintiffs file a supported formal motion in compliance with this Court's Local Rules, in which they demonstrate that they are the "prevailing parties" and that they are entitled to an award of attorney fees and costs, then at that time the Court will consider the issue.

[63]Rec. Docs. 11-1 and 11-2.

**3)** pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(4), 12(b)(5), 12(b)(6), and 12(f) is hereby **DENIED.**

     **IT IS FURTHER ORDERED** that Defendant's **Motion to Strike Plaintiffs' Affidavits and Exhibits (Rec. Doc. 22)** is hereby **DISMISSED** as **MOOT.**

     **IT IS FURTHER ORDERED** that the stay on discovery proceedings issued by this Court on January 14, 2014 (Rec. Doc. 37), is hereby lifted.

     January 27, 2014

                                                _____
                                              JAY C. ZAINEY
                              UNITED STATES DISTRICT JUDGE