**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PETER HOFFMAN, et al.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 13-5153** |
| **DAVID BAILEY** | **SECTION: "G"(5)** |

## ORDER

In this litigation, Plaintiffs Peter and Susan Hoffman (collectively "the Hoffmans") allege that Defendant David Bailey ("Bailey") sent an email to the Louisiana State Historic Preservation Office in which Bailey allegedly made defamatory statements against the Hoffmans by, according to the Hoffmans, accusing them of fraudulently participating in a Louisiana tax incentive program.[1] Pending before the Court is Plaintiff Peter Hoffman's "Motion for Partial Summary Judgment (FRCP 56)."[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court hereby grants in part and denies in part the motion.

## I. Background

### A. *Factual Background*

In their complaint, the Hoffmans state that Susan Hoffman is owner of Seven Arts Pictures Louisiana, LLC ("SAPLA"), which owns real property located at 807 Esplanade Avenue in New Orleans, Louisiana ("the Property").[3] The Hoffmans aver that SAPLA engaged in substantial rehabilitation of the Property in order to restore its historic character and to convert the Property

---

[1] Rec. Doc. 1.

[2] Rec. Doc. 139.

[3] Rec. Doc. 1 at 2.

1

so that it could be used as a motion picture post-production facility.[4] The Hoffmans contend that SAPLA obtained a letter from the Louisiana Department of Economic Development certifying that the Property was eligible for Louisiana film infrastructure tax credits and received certification from the United States Department of the Interior that the Property qualified for United States historical rehabilitation tax credits.[5] The Hoffmans also allege that SAPLA has requested, but has not yet received, certification from the Louisiana State Historic Preservation Office ("SHPO") that the Property qualifies for Louisiana historic rehabilitation tax credits.[6]

According to the Hoffmans, Peter Hoffman was the Chief Executive Officer of Seven Arts Pictures Plc ("SAP Plc"), an English public limited company, until November 9, 2011.[7] Bailey worked as the company's Finance Director from August 2009 until he left in December 2009.[8] Subsequently, on November 29, 2012, Bailey allegedly sent an e-mail to SHPO stating:

> Dear Jessica
>
> I was interested to read that Peter and Susan Hoffman have applied for rehabilitation tax credits on 807 Esplanade, and have included them as revenue in accounts filed with the SEC. This appears to contradict other evidence which strongly indicates that Peter Hoffman and Susan Hoffman are the architects not of a building, but of a major economic fraud.
>
> http://stock-bb.com/seven-arts-pictures-plc-pink-sapx/ has several discussions on this matter.
>
> Who should I write to with the evidence I personally have that indicates that all the applications made by the Hoffmans are fraudulent, that the amounts claimed were probably not spent, and that some or all of the funds used to renovate the property were improperly diverted from SAP Plc by way of a transfer to a related party within 2 years of a SAP Plc becoming insolvent?

---

[4] *Id.* at 3.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4.

David J Bailey[9]

The Hoffmans claim that Bailey's statements in the November 2012 e-mail were "untrue and [were] made maliciously without any basis in fact and with an intent to damage plaintiffs' reputations, successes, and good will," and were intended "to embarrass plaintiffs and to damage plaintiffs' business relationships."[10] The Hoffmans contend that Bailey had never seen the relevant reports summarizing the rehabilitation expenditures and had no responsibility for those expenses during his time as SAP Plc's Finance Director.[11] The Hoffmans argue that Bailey's conduct constitutes defamation and defamation *per se*.[12]

In response, Bailey contends that the Hoffmans' lawsuit is without merit and "part of their scheme of harassment, threats, intimidation, and retaliation" against Bailey for providing assistance to the government in its investigation of the Hoffmans.[13] According to Bailey, while he was employed as Finance Director of SAP Plc in 2009, he had access to accounting records and other financial documents related to the Hoffmans' "plans and schemes" to receive tax credits on the 807 Esplanade Property.[14] Bailey asserts that he became aware of inconsistencies and misstatements in SAP Plc's records and of efforts by the Hoffmans to "apply for and obtain and then resell for cash millions of dollars of tax credits with respect to the 807 Esplanade Property."[15] Bailey further alleges that a series of articles published in 2012 informed him that the Hoffmans

---

[9] Rec. Doc. 1-3 at 30.

[10] Rec. Doc. 1 at 5.

[11] *Id.* at 5–6.

[12] *Id.* at 6–8.

[13] Rec. Doc. 98 at 1–2.

[14] *Id.* at 22.

[15] *Id.*

were seeking millions of dollars in tax credits with respect to the 807 Esplanade Property to help finance "$13.5 million" in redevelopment costs, which Bailey asserts he knew was a false and inflated number.[16] Thus, Bailey alleges that he sent his November 24, 2012 email that is the subject of this defamation action to Louisiana governmental employee Jessica Richardson.[17]

**B.** **_Procedural Background_**

The Hoffmans filed a complaint in this matter on July 23, 2013.[18] On July 24, 2013, the matter was assigned to Section "A" of the Eastern District of Louisiana.[19] On August 26, 2013, Bailey filed a motion to dismiss for lack of personal jurisdiction, for improper service of process, and for improper venue, and in the alternative, a special motion to strike pursuant to Louisiana Code of Civil Procedure article 971.[20] On January 14, 2014, Judge Zainey stayed discovery proceedings in this matter pursuant to Louisiana Code of Civil Procedure article 971(D) until the Court issued a ruling on the motion to strike.[21] On January 27, 2014, Judge Zainey denied both the motion to dismiss and the special motion to strike.[22]

On February 6, 2014, Judge Zainey held a status conference at which Bailey expressed his intention to seek certification for an interlocutory appeal of Judge Zainey's order denying Bailey's special motion to strike.[23] On that same day, Judge Zainey administratively stayed this matter

---

[16] *Id.* at 32–33.

[17] *Id.* at 34.

[18] Rec. Doc. 1.

[19] Rec. Doc. 2.

[20] Rec. Doc. 3-2 at 1.

[21] Rec. Doc. 37.

[22] Rec. Doc. 38.

[23] Rec. Doc. 39.

"pending resolution of that appeal."[24] However, no appeal was filed at that time.[25] Rather, on February 21, 2014, Bailey filed a motion for reconsideration of Judge Zainey's January 27, 2014 Order on the new grounds that Peter Hoffman was indicted in the Eastern District of Louisiana on February 6, 2014, on six counts of conspiracy and wire fraud relating to his submission of false applications for more than $1.1 million of tax credits with respect to the property at issue in this case.[26] On February 25, 2014, Bailey also filed a motion to lift the administrative stay so his motion for reconsideration could be considered.[27]

On February 25, 2014, Judge Zainey recused himself "[i]n light of the indictment recently filed against one of the plaintiffs," and the case was randomly realloted to this Court, Section "G."[28] On December 23, 2015, this Court lifted the stay imposed by Judge Zainey, as Bailey was not pursuing an interlocutory appeal of Judge Zainey's Order denying Bailey's special motion to strike.[29] The same day, the Court denied Bailey's motion for reconsideration, as Bailey had not previously raised the Rule12(b)(6) arguments that he made in his motion for reconsideration and had not moved for reconsideration of the denial of his special motion to strike.[30] The Court further noted that "if Bailey wishes to file a motion to dismiss or a motion for summary judgment, the Court will consider such a motion at that time."[31]

---

[24] *Id.*

[25] *See* Rec. Doc. 77 at 11 (this Court noting that, as of December 23, 2015, no appeal of Judge Zainey's Order had been filed).

[26] Rec. Doc. 43-1 at 2.

[27] Rec. Doc. 44.

[28] Rec. Doc. 45.

[29] Rec. Doc. 77.

[30] Rec. Doc. 78 at 23.

[31] *Id.* at 24.

On December 30, 2015, Bailey filed a new motion to dismiss pursuant to Rule 12(b)(6), in which he requested that the Court take judicial notice of several filings in the criminal actions against the Hoffmans and argued that the Hoffmans failed to state a claim upon which relief could be granted in light of those criminal convictions.[32] On February 3, 2016, the Court denied the motion.[33] The Court determined that, on a motion to dismiss, it could only take judicial notice of the fact that the Hoffmans were convicted of mail fraud, wire fraud, and conspiracy to commit mail or wire fraud generally, but not of the facts underlying the convictions that Bailey pointed to in support of his motion to dismiss.[34] The Court further concluded that the Hoffmans had sufficiently alleged that Bailey's email constitutes defamation per se, and thus the Court denied Bailey's motion to dismiss under Rule 12(b)(6).[35] On February 10, 2016, Bailey filed a notice of appeal to the Fifth Circuit on the grounds that he was entitled to immunity from the defamation claims,[36] which the Fifth Circuit dismissed for lack of jurisdiction.[37]

Since this action was filed, the Hoffmans have been convicted on multiple counts of wire fraud, mail fraud, and conspiracy in connection with tax credit applications regarding the 807 Esplanade Property.[38] On September 14, 2016, Bailey filed counterclaims against the Hoffmans to recover damages caused by the Hoffmans' allegedly "threatening, harassing, intimidating, and retaliatory litigation" against Bailey under 18 U.S.C. § 1514A and Louisiana state law for

---

[32] Rec. Doc. 80.

[33] Rec. Doc. 87.

[34] *Id.* at 22.

[35] *Id.*

[36] Rec. Doc. 89.

[37] Rec. Doc. 95.

[38] Rec. Doc. 80-1 at 6; Rec. Doc. 81 at 9.

malicious prosecution.[39] On April 26, 2017, the Court granted the Hoffmans' motion to dismiss pursuant to Rule 12(b)(6) and dismissed Bailey's counterclaims for failure to state a claim upon which relief could be granted.[40] The Court determined that: (1) Bailey had failed to allege that he complied with the statutory prerequisites necessary to file an action under 18 U.S.C. § 1514A, and thus dismissed his claim under Section 1514A; and (2) Bailey failed to allege that there had been a "bona fide termination" of this proceeding in his favor as required to assert a malicious prosecution claim under Louisiana state law.[41] The Court dismissed Bailey's premature malicious prosecution claim without prejudice.[42] On April 26, 2017, the Court denied the Hoffmans' motion for sanctions against Bailey's counsel for filing Bailey's counterclaims.[43]

On March 2, 2017, Peter Hoffman ("Hoffman") filed the instant motion for partial summary judgment.[44] On March 15, 2017, the Court granted Bailey's expedited motion for an extension of time to file an opposition to Hoffman's motion for summary judgment and continued the submission date for Hoffman's motion to April 19, 2017.[45] On April 12, 2017, Bailey filed an opposition.[46] On April 19, 2017, Hoffman filed a reply with leave of Court.[47] On April 19, 2017, with leave of Court, Bailey filed an amended opposition memorandum.[48] On April 26, 2017,

---

[39] Rec. Doc. 98.

[40] Rec. Doc. 191.

[41] *Id.*

[42] *Id.*

[43] Rec. Doc. 190.

[44] Rec. Doc. 139.

[45] Rec. Doc. 154.

[46] Rec. Doc. 164.

[47] Rec. Doc. 178.

[48] Rec. Doc. 180.

Bailey filed a sur-reply with leave of Court.[49] On April 28, 2017, with leave of Court, Hoffman also filed a sur-reply.[50]

## II. Parties' Arguments

### A. *Peter Hoffman's Arguments in Support of the Motion*

In his motion, Hoffman moves for entry of partial summary judgment on seven issues pursuant to Federal Rule of Civil Procedure 56.[51] In particular, Hoffman argues that there are no disputed issues of material fact with regard to the following: (1) Bailey's email constitutes defamation *per se*; (2) Bailey's email was published on November 24, 2012, to Jessica Richardson, an employee of SHPO; (3) Bailey made the defamation without any reasonable grounds for believing the statement was true; (4) Bailey is not entitled to any conditional privilege; (5) the statements in Bailey's email are false; (6) because Bailey's email constitutes defamation *per se*, the Hoffmans "suffered presumed injury to reputation and pain, humiliation and suffering, irrespective of proof of any pecuniary loss;" and (7) the Hoffmans are entitled to recover punitive or exemplary damages pursuant to Louisiana Civil Code article 3546.[52] Hoffman avers that this motion will resolve all issues in this action except for whether Bailey acted with malice or "reckless disregard" of the truth or falsity of his statements.[53]

### 1. Defamation *per se*

First, Hoffman asserts that, in the February 13, 2016 Order denying Bailey's motion to dismiss pursuant to Rule 12(b)(6), this Court "ruled that the Bailey Defamation is defamation *per*

---

[49] Rec. Doc. 193.

[50] Rec. Doc. 201.

[51] Rec. Doc. 139-2 at 5.

[52] *Id.* at 5–7.

[53] *Id.* at 7.

*se* under Louisiana law."[54] Hoffman further contends that Bailey's email constitutes defamation *per se* because Bailey allegedly accused the Hoffmans of committing fraud, which Hoffman asserts implicates criminal conduct and tends to injure the Hoffmans' personal and professional reputations.[55]

### 2.    Publication

Second, Hoffman avers that Bailey has admitted to publishing his email to SHPO on November 29, 2012.[56] Hoffman also points out that Bailey was "deemed to have admitted publication of the Bailey Defamation" by the Magistrate Judge when he failed to timely respond to the Hoffmans' request for admissions regarding publication.[57]

### 3.    Fault

Third, Hoffman argues that, as this Court noted in its Order denying Bailey's motion to dismiss, fault, as well as falsity and damage, are presumed in cases of defamation *per se* under Louisiana law.[58] Thus, Hoffman contends that he must only establish a *prima facie* case of negligence, and that the ultimate burden is on Bailey to prove that he did not act negligently when making the allegedly defamatory statements.[59] However, Hoffman further asserts that the Louisiana Supreme Court case that set a minimum standard of fault of negligence for defamation cases was decided on First and Fourteenth Amendment grounds.[60] Because Judge Zainey held that

---

[54] *Id.* at 13 (citing Rec. Doc. 87 at 20).

[55] *Id.* at 5.

[56] *Id.* at 13 (citing Rec. Doc. 98).

[57] *Id.* (citing Rec. Doc. 130).

[58] *Id.* (citing Rec. Doc. 87 at 27).

[59] *Id.*

[60] *Id.* at 14 (citing *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 675 (La. 2006)).

Bailey has no First Amendment rights, Hoffman avers, the Louisiana Supreme Court's holding in *Kennedy* does not apply, and thus "Hoffman in this case need not prove even negligence."[61] Nonetheless, Hoffman contends, negligence is presumed in defamation *per se* cases.[62]

Additionally, Hoffman argues that the undisputed facts show that Bailey acted with "reckless disregard" for the truth or falsity of his statements, and thus was at least negligent.[63] Hoffman asserts that he "testified to Bailey's personal animus toward him" in his affidavit "arising out of Mr. Hoffman's criticism of Bailey's incompetence as a public company financial director" and Bailey's alleged false representations about his skills.[64] Hoffman points out that Bailey's Answer relies only on the alleged truth of his statements, and not on a "good faith mistake" defense.[65]

Moreover, Hoffman argues that "Bailey's negligence, if not reckless disregard of the truth or falsity of the Bailey Defamation, is established by" a number of allegedly undisputed facts. For example, Hoffman points to: (1) Bailey's inclusion of Mrs. Hoffman in his statements, even though Hoffman contends that Bailey has never met Mrs. Hoffman or spoken with her; (2) Bailey's deemed admissions that the Property was rehabilitated, that the "before" and "after" photos of the Property are authentic, that the expenses incurred by SAPLA are set forth in the Compilation Report, that the renovated Property met the standards for historic rehabilitation, and that SAPLA was entitled to Historic Credits for its qualified rehabilitation expenditures; (3) that no investigation or criminal charges have ever been brought against the Hoffmans regarding

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

SAPLA's claim of Historic Credits, which Hoffman contends was the subject of Bailey's email, as opposed to the "very different claims for Infrastructure Credits, wholly irrelevant to Historic Credits," upon which the Hoffmans' criminal convictions were based; and (4) Bailey, whose employment at SPA Plc ended in 2009, did not review or have access to any documents submitted for the certified Compilation Report in 2012.[66] Additionally, Hoffman argues that Bailey had "no knowledge whatsoever of the items claimed as qualified historic rehabilitation expenses in the Compilation Report in 2012," as he did not have responsibility for these expenses while employed at SPA Plc.[67] Hoffman contends that Bailey also did not have knowledge of any evidence in the possession of the U.S. Attorney on the date of his allegedly defamatory statements.[68]

### 4. Conditional Privilege

Fourth, Hoffman asserts that Bailey has no conditional privilege defense.[69] Hoffman avers that he has requested in a separate motion that the Magistrate Judge strike Bailey's Answer,[70] and thus Bailey has not affirmatively pleaded conditional privilege.[71] Hoffman argues that even if the Court were to consider Bailey's Answer, his affirmative pleading of a conditional privilege is insufficient, as it merely claims "the benefit of the doctrine of privilege/ conditional privilege" generally without specifying which type of privilege Bailey affirmatively asserts.[72]

---

[66] *Id.* at 15–16.

[67] *Id.* at 17.

[68] *Id.*

[69] *Id.* at 18.

[70] The Court notes that the motion that Hoffman refers to was denied as moot by the Magistrate Judge. *See* Rec. Doc. 131. The Magistrate Judge granted in part Hoffman's motion for reconsideration of that Order to the extent that Plaintiff's request for admissions were deemed admitted, but denied in part Hoffman's motion for reconsideration in "all other respects." Rec. Doc. 138.

[71] Rec. Doc. 139-2 at 18.

[72] *Id.* at 18–19.

### i. Common interest privilege

Hoffman further contends that Bailey has no "common interest" or "duty to speak" conditional privilege, as he had no duty to report any alleged fraud that occurred after Bailey left his employment at SPA Plc and his employment agreement prohibited disclosing confidential information learned during his employment.[73] Additionally, Hoffman alleges that Bailey had no interest in the Historic Credits, as they were filed by different legal entities that Bailey did not work for.[74] According to Hoffman, Bailey cannot claim the common interest privilege because he is a "vitriolic, disgruntled 'volunteer' who seeks to harm the Hoffmans for his own reasons unrelated to his former duties to [SAP Plc.]"[75]

### ii. Public interest privilege

Moreover, Hoffman avers that Bailey is not entitled to the "public interest" conditional privilege as defined by the Restatement (Second) of Torts, as it applies only to communications "to law enforcement officers of expected criminal authorities" in support of "prevention of crimes and apprehension of criminals."[76] However, according to Hoffman, Bailey was fully aware that the Hoffmans were under investigation at the time he made the allegedly defamatory statements, and thus there was no interest present in preventing a crime or preventing a criminal from "escaping detention."[77] Hoffman further contends that Bailey sent his email to SHPO, which is not a law enforcement agency and does not enforce Louisiana's tax laws.[78] According to Hoffman, the

---

[73] *Id.* at 20.

[74] *Id.*

[75] *Id.*

[76] *Id.* (emphasis omitted).

[77] *Id.* at 21.

[78] *Id.*

public interest privilege is also limited to victims or witnesses of a suspected crime, and not "disgruntled" volunteers who "have no percipient knowledge of the alleged 'crime.'"[79]

### 5. Falsity

Fifth, Hoffman argues that falsity is presumed in defamation *per se* cases, and thus the burden shifts to Bailey to rebut it.[80] Hoffman also avers that "issuance of the Certifications" and the Compilation Report further shows the falsity of Bailey's various statements.[81] For example, Hoffman points out that Bailey did not provide any evidence or documents to support his allegedly defamatory statement that he had "evidence that indicates that all the applications made by the Hoffmans are fraudulent."[82] According to Hoffman, Bailey also could not know whether his statement that the "amounts claimed [in the tax credit application] were probably not spent" was true, as he never saw any of the proofs of payments or other records delivered to auditors.[83] Indeed, Hoffman states that all the amounts claimed in the Compilation Report were paid.[84] Hoffman also argues that Bailey's statement that "some or all of the funds used to renovate the property were improperly diverted from [SPA Plc] by way of transfer to a related party" is false, as no money "used to renovate the property" were due to SPA Plc.[85]

---

[79] *Id.*

[80] *Id.* at 22.

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] *Id.* at 23.

[85] *Id.*

### 6.    Presumed Damages

Sixth, Hoffman contends that injury to reputation and humiliation and suffering is presumed in cases of defamation *per se*.[86] Hoffman argues that Judge Zainey has determined that Bailey has no First Amendment rights, and even if the First Amendment were applicable, it does not limit presumed damages awards in defamation cases against non-media defendants such as Bailey.[87] Moreover, Hoffman alleges that his testimony establishes that Bailey's statements were a "painful humiliation with state officials" and "dramatically affected [Hoffman's] business in Los Angeles and with his principal lender."[88] Hoffman asserts that he "is widely known in the motion picture business," and avers that his testimony establishes presumed damages to Hoffman's reputation of $250,000.[89]

### 7.    Punitive Damages

According to Hoffman, Louisiana Civil Code article 3546 provides that punitive damages cannot be awarded in Louisiana unless authorized by "the law of the state where the resulting injury occurred" or "the law of the state where the person whose conduct caused the injury is domiciled."[90] Hoffman avers that he is a resident of California, and that punitive damages for defamation are permitted by the laws of California if the defamation was made with malice.[91] Moreover, Hoffman argues that Bailey is a resident of England, and that "the law of England and

---

[86] *Id.*

[87] *Id.*

[88] *Id.*

[89] *Id.*

[90] *Id.* at 24.

[91] *Id.* (citing Ca. Civ. Code § 48(c)).

Wales" provides the Court with discretion to award punitive damages if the "decision to publish was made knowing it to be wrong or reckless as to whether it was wrong."[92]

## B.     *Bailey's Arguments in Opposition to the Motion*

Bailey opposes Hoffman's motion for partial summary judgment.[93] The Court notes that, in his opposition memorandum, Bailey does not specifically address Hoffman's arguments on any of the seven issues raised by Hoffman. Rather, Bailey provides the Court with a series of factual allegations and exhibits drawn largely from Bailey's Declaration attached to the opposition which Bailey contends demonstrates that all of the material facts of this case are in dispute.[94]

According to Bailey, Peter Hoffman, Susan Hoffman, and their business partner, Michael Arata ("Arata"), purchased the 807 Esplanade Property to renovate it and convert it into a post-production film facility.[95] Bailey avers that Louisiana's film infrastructure tax credits allows individuals or businesses to receive an amount equal to 40% of their qualified and audited film infrastructure expenditures, and that, upon certification, the applicant can sell the certification to local businesses and individuals to use as state tax credits.[96] Bailey contends that on February 26, 2009, the Hoffmans and Arata applied for the Louisiana film infrastructure tax credits "for money they claimed had been spent" on the 807 Esplanade Property, and on June 19, 2009, they received approximately $1.1 million in tax credits.[97] Bailey asserts that Arata then purchased the tax credits

---

[92] *Id.* (citing *Broome v. Cassell*, [1972] AC 1027, 1079 C-E, 1088 G-1089A, 1094 C-E, 1101  D-G, 1121, 1130 D-F; *John v. Mirror Group Newspaper Ltd.*, [1997] QB 586, 618 G-619A).

[93] Rec. Doc. 180 at 1.

[94] *Id.*

[95] *Id.*

[96] *Id.* at 2.

[97] *Id.*

at a discount and sold them to local businesses and individuals for a profit.[98] Bailey alleges that on May 15, 2014, the Hoffmans were indicted by a grand jury for, among other actions, submitting false and misleading tax credit applications and submitting false and misleading internal accounting records and invoices to auditors to make it appear that certain expenditures were made.[99] Bailey avers that the Hoffmans were convicted of the conspiracy to commit mail or wire fraud charge, and Peter Hoffman was convicted of sixteen counts total in relation to their rehabilitation of the Property.[100]

Bailey alleges that, in addition to the infrastructure tax credits, the Hoffmans also applied for State and Federal Historic Preservation tax credits with the Louisiana Division of Historic Preservation.[101] According to Bailey, Susan Hoffman, on behalf of SAPLA, applied for the federal tax credits on January 11, 2008, May 9, 2008, and June 29, 2012.[102] Bailey asserts that the federal tax credits were certified and that the owner of the building at the time, Steven Markoff, received more than $2.4 million in federal tax credits, *i.e.* 26% of the final rehabilitation cost of $9,298,234.[103] However, Bailey argues that it "doesn't add up" that the estimate of rehabilitation costs went from $2,000,000 on May 9, 2008, to the final alleged cost of over $9 million.[104] Bailey avers that Susan Hoffman testified that she only spent $3.5 million.[105]

---

[98] *Id.*

[99] *Id.* at 3.

[100] *Id.*

[101] *Id.* at 4.

[102] *Id.*

[103] *Id.*

[104] *Id.*

[105] *Id.*

Bailey points out that Susan Hoffman, on behalf of SAPLA, did not apply for the state historic tax credits until July 9, 2012.[106] In that application, Bailey asserts, Susan Hoffman again estimated the cost of rehabilitation at $2 million; however, according to Bailey, that was nine days after Susan Hoffman represented in her federal historic tax credit application that the rehabilitation was completed and that the total cost was over $9.2 million.[107] Bailey alleges that the Louisiana Department of Revenue has refused to grant these applications for state historic tax credits.[108]

Next, Bailey states that on July 28, 2009, he was selected to be Chief Financial Officer of SAP Plc.[109] Bailey represents that he was a chartered accountant and had previously trained with Deloitte for seven years, where he was an auditor and a Forensic Accountant specializing in the investigation and prosecution of fraud and money laundering.[110] Bailey argues that he had "substantial evidence upon which to allege that the entirety of the seven arts structure was tainted by fraud, and had the professional skills, ability, and professional advice from attorneys and law enforcement to be certain of this."[111] According to Bailey, he knew, or had reasonable grounds to believe, that: (1) funds were diverted from SAP Plc in the United Kingdom to SAPLA in Louisiana without proper authorization or recording; (2) Peter Hoffman and his daughter, Kate Hoffman, who served as the COO of SAP Plc, had been engaged in the systematic falsification of corporate documents, financial transactions, signatures, and cash movements since 2008; (3) Peter Hoffman and Kate Hoffman were engaged in the fraudulent "circular transfer" of funds to inflate or misstate

---

[106] *Id.*

[107] *Id.*

[108] *Id.*

[109] *Id.*

[110] *Id.* at 5.

[111] *Id.*

the amount spent on the 807 Esplanade Property; and (4) Bailey knew those funds which had been spent on the 807 Esplanade Property were tainted by fraud.[112] Bailey states that he continued to track, through public sources, the expenditures on the Property from December 2009 until December 2012.[113]

Bailey avers that, prior to sending the email, he had received substantial professional advice from attorneys and law enforcement regarding reporting the Hoffmans' activity and did not act negligently in making his allegations.[114] According to Bailey, while he was employed at SAP Plc, he was involved in "detailed work to secure tax credits" on the Property.[115] Bailey contends that he prepared "financial support and analyses for notes for potential lenders and tax credit brokers," and that he raised "significant issues" related to SAP Plc's claim for tax credits to Peter Hoffman and Kate Hoffman directly.[116] Bailey argues that the "tax credits allegedly due from 807 Esplanade were material to the accounts of SAP Plc and the receipt of cash on the dates due was critical to the solvency of SAP Plc."[117]

Bailey avers that in November 2009, Peter Hoffman visited the United Kingdom to try to resolve some of the accounting issues raised by Bailey and the auditors, and during that visit, members of the accounting team advised Bailey that approximately $857,000 was transferred to SAP Plc from a United States bank used by SAP Inc.[118] Bailey argues that this money was being

---

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Id.*

[116] *Id.* at 7.

[117] *Id.* at 8.

[118] *Id.*

"circled around" between SAPLA and the Los Angeles office.[119] According to Bailey, this was done to "create false expenditure records, or to inflate expenditure on which tax credits could be claimed as a matter of routine, not just in respect" to the 807 Esplanade Property.[120]

Bailey points out that in November 2009, he made a report to the Board of SAP Plc and Kate Hoffman in which he informed them that there "appear[s] to be substantial uncertainties over the tax credits and production costs" of a particular production and that there "also appears to have been the circling of $2,511,993 to create production costs . . . that were then used to claim tax credits."[121] Bailey asserts that on November 6, 2009, he reported to the audit committee by email that "he had serious concerns about the accounting records, amounting to a very high risk of regulatory breach or fraud."[122]

According to Bailey, he left SAP Plc on December 10, 2009, because he was owed unpaid wages and because the company lacked cash and risked insolvency, and because of the "clear indications that serious frauds may already have occurred."[123] Bailey asserts that he then contacted the law firm Peters and Peters and worked with a "senior partner" there to report the "extensive list of frauds, false accounting, corporate government failures and legal matters" that Bailey discovered while working at SAP Plc.[124] Bailey argues that he had a professional obligation and

---

[119] *Id.*

[120] *Id.*

[121] *Id.* at 9–10.

[122] *Id.* at 10.

[123] *Id.* at 13.

[124] *Id.*

legal duty to report his suspicions to the proper authorities in the United Kingdom and United States.[125] According to Bailey, SAP Plc was made insolvent on November 9, 2011.[126]

Bailey contends that he worked with the authorities in the United Kingdom to investigate and gather information on the allegedly fraudulent activities of SAP Plc, and that in May 2011, the Serious Fraud Office in London referred the case to the SEC in New York.[127] Bailey argues that the reports he provided to the Serious Fraud Office officially established him as a "whistleblower" in the United Kingdom and granted him "full legal protection from harassment and prosecution by SAP Plc or any of its directors in the UK."[128] Bailey states that on August 2, 2012, he mailed a "bundle of documents, a statement, and findings in respect of 807 Esplanade to" Jim Letten at the U.S. Attorney's Office for the Eastern District of Louisiana to "ask him to investigate SAPLA and the transactions that funded 807 Esplanade."[129] Bailey alleges that he did not receive a response.[130] Bailey asserts that there are "many items" that were part of the Hoffmans' felony convictions "that also apply to the expenditures for the historic credits."[131] Finally, Bailey states that he sent the email to SHPO and reported this "to protect the public and the state of Louisiana," and because he had a professional duty to report "what he determined to be illegal activity."[132]

---

[125] *Id.*

[126] *Id.* at 14.

[127] *Id.*

[128] *Id.* at 15.

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] *Id.*

In his Declaration attached to his opposition, Bailey further avers that Peter Hoffman was quoted in an article published on June 29, 2012, as saying that the 807 Esplanade Property "was bought for $1.7 million, but by the time other expenditures were added in, the project grew to $13.5 million."[133] Bailey contends that he was "immediately aware that these numbers conflicted with claims made in 2009."[134] Bailey asserts that the public reports regarding the application for historic rehabilitation credits for the 807 Esplanade Property were "widely at odds with the financial facts, as Mr. Bailey knew them to be from first hand," and that the numbers "could not possibly be true."[135] Bailey argues that "[g]iven that Mr. Bailey was aware that SAPLA had no income of its own, other than that which had passed from SAP Plc and SAE Inc., and given that Mr. Bailey was fully aware of the total amount spent by December 2009, it was reasonable and Mr. Bailey was entitled to say . . . that the monies had not been spent as claimed."[136] Bailey avers that in November 2012, he made various telephone calls to Louisiana and New Orleans departments to determine who to send his information to and was led to Jessica Richardson at SHPO.[137] Thus, according to Bailey, he emailed Jessica Richardson and Nichole Morris, "who ran the Historic Buildings team," "with a question as to whom Mr. Bailey should report the allegations and evidence" he had regarding the Hoffmans' allegedly fraudulent activity.[138]

---

[133] Rec. Doc. 164-9 at 33.

[134] *Id.* at 34.

[135] *Id.*

[136] *Id.* at 35.

[137] Rec. Doc. 164-9 at 43.

[138] *Id.*

## C.    *Hoffman's Arguments in Further Support of the Motion*

In his reply memorandum, Hoffman points out that Bailey's opposition does not address any of the seven issues raised by Hoffman in his motion, make any legal arguments, or cite to any cases.[139] Thus, Hoffman "presumes all these issues are stipulated and conceded."[140]

Hoffman argues that, to the extent that Bailey's response opposes the motion, it appears that Bailey contends that his allegedly defamatory statements were true.[141] However, Hoffman argues that Bailey has not produced any admissible evidence establishing that any or all of his factual contentions in his allegedly defamatory statement are true.[142] According to Hoffman, Bailey's response shows "why this action was necessary to hopefully bring an end to Bailey's merciless jihad of defamation against Mr. Hoffman, his family and his associates."[143]

Hoffman asserts that Bailey makes several factual contentions regarding SAPLA's applications for the *infrastructure* tax credits, which was the subject of the Hoffmans' convictions, but that Bailey's allegedly defamatory statements addressed the *historic* tax credits for which no charges have ever been brought.[144] Hoffman also argues that Bailey produced no competent evidence that the Louisiana Department of Revenue "has refused to allow" the historic credits, and that the Louisiana Department of Revenue "has not and cannot de-certify the state Historic Credits claimed by SAPLA and certified by SHPO."[145] Hoffman avers that it is irrelevant that the original

---

[139] Rec. Doc. 178 at 2.

[140] *Id.* at 3.

[141] *Id.*

[142] *Id.* at 4.

[143] *Id.*

[144] *Id.*

[145] *Id.* at 5.

estimate of construction costs in 2008 was $2 million while the final rehabilitation costs were over $9 million.[146] Moreover, Hoffman alleges that the 2012 application related to the expenditures accrued up to June 30, 2012, and was not solely limited to the expenditures up to December 2009 when Bailey left SPA Plc.[147] Hoffman further asserts that Kate Hoffman "had no involvement whatsoever in any expenditures on the Property or any 'circular transfer' of funds" at all, and that Bailey presents no evidence of this.[148]

Hoffman contends that Bailey also does not present any competent evidence, from the time of his employment or the "public sources" he cites, that any of the historic tax credit applications were fraudulent.[149] According to Hoffman, the only overlapping expenditures between the infrastructure tax credits and the historic tax credits are the claims for interest and developer fees, which have nothing to do with the amounts allegedly spent prior to December 2009.[150] Additionally, Hoffman avers that the basis for the convictions on the infrastructure tax credits was that the interest and developer fees were not paid, but that, with regard to the historic tax credits, "payment is not required for purposes of claiming qualified historic rehabilitation expenditures."[151] "Therefore, there could be no fraud in seeking Historic Credits by submission of false 'proof of payment' because in fact no 'proof of payment' was required."[152]

---

[146] *Id.*

[147] *Id.* at 6.

[148] *Id.*

[149] *Id.* at 7.

[150] *Id.*

[151] *Id.* at 8.

[152] *Id.* at 9.

Furthermore, Hoffman provides a number of evidentiary objections to Bailey's opposition and attachments.[153] Hoffman argues that Bailey attaches "unverified and unauthenticated Exhibits to his Statement of Contested Material Facts."[154] Hoffman also objects to Bailey's Declaration "in its entirety as it is unexecuted and not sworn before a taker of oaths."[155] Hoffman avers that Bailey is not subject to Louisiana law regarding statements made under penalty of perjury, and thus his statements can be evidence only if sworn.[156] Accordingly, Hoffman lists over 150 paragraphs in Bailey's Declaration to which Hoffman objects on foundation, relevancy, lack of personal knowledge, improper opinion, hearsay, authentication, and/or best evidence grounds.[157]

Finally, Hoffman argues that Bailey's allegedly defamatory statements were in fact false, and Bailey has provided no evidence to suggest otherwise.[158] Thus, Hoffman asserts that there is no triable issue of material fact that some or all of the assertions in Bailey's allegedly defamatory statements are "anything but false."[159]

## D.  *Bailey's Arguments in Further Opposition to the Motion*

In his sur-reply, Bailey disputes that he conceded the issues raised by Hoffman in Hoffman's motion for partial summary judgment.[160] Bailey contends that his response was

---

[153] *Id.* at 10.

[154] *Id.*

[155] *Id.*

[156] *Id.*

[157] *Id.* at 10–12.

[158] *Id.* at 12–13.

[159] *Id.*

[160] Rec. Doc. 193 at 1.

disputing the facts that Hoffman alleges are uncontested.[161] Bailey states that he has always argued that his email to SHPO was not defamation, "because it was true and because Bailey had a conditional privilege to make the statements in the email."[162] Bailey states that he "has admitted that he sent the email to the SHPO and he has admitted that the email says what it says," but he has not admitted that it constitutes defamation.[163]

Bailey argues that Hoffman's assertion that conditional privilege does not apply here because SHPO has no investigative personnel is incorrect.[164] According to Bailey, Tom Boulton, an Inspector General of the State of Louisiana, "had been in contact with the SHPO and was investigating the historic tax credit application of the Plaintiffs prior to Bailey sending the email asking the SHPO where he should send his information regarding what he knew about fraudulent transactions regarding the tax credit applications for the rehabilitation of 807 Esplanade Avenue."[165] Bailey asserts that Kristin Sanders, an employee of SHPO, testified in her deposition that she knew of the ongoing inspection by the Inspector General and forwarded Bailey's email to Boulton, who eventually replied to Bailey and made further inquiries into the 807 Esplanade Property.[166] Thus, Bailey argues that because Bailey's report of fraudulent activity sent to SHPO was correctly forwarded to the Inspector General for investigation, a conditional privilege exists for Bailey's email communication to SHPO.[167]

---

[161] *Id.*

[162] *Id.* at 2.

[163] *Id.*

[164] *Id.*

[165] *Id.*

[166] *Id.*

[167] *Id.*

Bailey avers that, as a qualified chartered accountant with experience in forensic accounting investigating fraud, he had a duty to report what he knew about the Hoffmans' allegedly fraudulent activity.[168] Bailey alleges that he had "substantial evidence upon which to allege that the entirety of the seven arts structure was tainted by fraud, and had the professional skills, ability, and professional advice from attorneys and law enforcement to be certain of this."[169] Bailey represents that he received advice from a "senior partner of Peters and Peters," who "planned for Bailey to report" what he knew to the criminal and tax authorities in the United Kingdom and the United States.[170] Bailey contends that he first reached out to United States Attorney Jim Letten in August 2012 to report the irregularities, but he did not receive a response.[171] Subsequently, Bailey avers that he became aware of website and media reports regarding the funding of the rehabilitation of the 807 Esplanade Property in October 2012, and that these reports were "widely at odds with the financial facts" of which Bailey was aware.[172] Bailey asserts that he made various telephone calls to departments in the "NOLA civil and tax administration to try to find the correct person to send information to," and this led him to sending his email to Jessica Richardson at SHPO in November 2012.[173] According to Bailey, because he had a duty to report the fraudulent activity to the government agency to whom the Hoffmans were applying for tax credits, Bailey had a

---

[168] *Id.* at 3.

[169] *Id.*

[170] *Id.* at 4.

[171] *Id.*

[172] *Id.*

[173] *Id.* at 5.

conditional privilege to make such a report.[174] Whether Bailey abused such a privilege here, Bailey argues, is a question of fact for the factfinder.[175]

Bailey further argues that he did not concede that the Hoffmans suffered injury to their reputation, as he asserts that any damage to their reputation was caused "by their own acts of being convicted of felony charges."[176] Bailey also points out that this email was not circulated in the public, and that the Hoffmans "cannot show that anyone knew of this email," as it was only forwarded to the Inspector General who was already investigating the Hoffmans.[177] Bailey argues that the Hoffmans cannot show that the single email sent to SHPO caused any additional damage.[178]

Moreover, Bailey asserts that Louisiana has a general public policy against punitive damages, and that Peter Hoffman mispresents the Louisiana Code that allows for punitive damages in two specific situations.[179] Bailey contends that article 3546(1) does not apply here because it considers the law of the state where the allegedly injurious *conduct* occurred, which is in Louisiana.[180] Bailey further asserts that that article 3546(2) also does not apply here because it considers the law of the state where the *injury* occurred, which Bailey argues was also in

---

[174] *Id.*

[175] *Id.*

[176] *Id.*

[177] *Id.*

[178] *Id.* at 6.

[179] *Id.*

[180] *Id.*

Louisiana.[181] Thus, Bailey avers that punitive damages are not permitted in this case.[182] Furthermore, Bailey points out that neither of the Hoffmans requested punitive damages in their complaint, and the Hoffmans should be precluded from requesting punitive damages for the first time at this late stage of litigation.[183]

E.    *Hoffman's Arguments in Further Support of the Motion*

In his "Sur-Rebuttal Memorandum," Hoffman asserts that it appears that Bailey has conceded "fault" as an issue for adjudication, as, according to Hoffman, Bailey "makes no good faith or 'negligence' plea in abatement of his offense."[184] Hoffman also avers that Bailey is foreclosed from contesting the "fault" issue "by his deemed admissions to Mr. Hoffman's Request for Admissions."[185] Hoffman argues that Bailey's admission of "fault" also "eliminates the so-called 'common interest' privilege, the basis of Bailey's mis-described 'duty to speak,'" as any such privilege is abused if the defamer is found to be at fault.[186] Additionally, Hoffman contends that the "common interest" privilege is limited to "appropriate persons within the employer's walls," and thus Bailey cannot claim this privilege for defamation to SHPO three years after his employment terminated.[187]

Moreover, Hoffman argues that the "public interest" privilege is not triggered by any "duty to speak," as it is a victim or percipient witness's right to respond to ongoing criminal behavior,

---

[181] *Id.*

[182] *Id.*

[183] *Id.* at 7.

[184] Rec. Doc. 201 at 1.

[185] *Id.*

[186] *Id.*

[187] *Id.* at 2.

as opposed to a "disgruntled 'volunteer' long removed from and indeed never at the 'scene of the crime.'"[188] Hoffman points out that Bailey failed to cite to any authority that every "whistleblower" removed from the crime is protected by the "public interest" privilege.[189] Moreover, Hoffman asserts that, even if Bailey had this right, it did not extend to defaming Hoffman to SHPO, which has no law enforcement responsibilities.[190]

Finally, Hoffman avers that Section 3546(1) allows for punitive damages here, as Bailey prepared and published his email from England and caused injury to Hoffman in California.[191] Hoffman argues that the "purpose of Section 3546(1) is to not protect a tortfeasor who resides in a jurisdiction that permits punitive damages awards and who injures a party residing in a jurisdiction that protects him or her with awards of punitive damages."[192]

### III. Law and Analysis

#### A.    *Legal Standard for Motions for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[193] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[194] All reasonable inferences are drawn in favor of the nonmoving party,

---

[188] *Id.*

[189] *Id.*

[190] *Id.*

[191] *Id.* at 3.

[192] *Id.*

[193] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[194] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[195] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[196] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[197]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[198] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[199] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[200] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[201] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable

---

[195] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[196] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[197] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[198] *Celotex*, 477 U.S. at 323.

[199] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

[200] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[201] *Little*, 37 F.3d at 1075.

trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[202]

## B.    *Legal Standard for Louisiana Defamation Law*

A cause of action for the tort of defamation arises out of Louisiana Civil Code article 2315.[203] "Defamation involves the invasion of a person's interest in his or her reputation and good name."[204] The five elements of defamation under Louisiana law are: "(1) defamatory words; (2) publication to a person other than the one defamed; (3) falsity; (4) malice; and (5) resulting injury."[205] Some Louisiana courts set forth the "actual or implied malice" requirement as the "fault (negligence or greater) on the part of the publisher."[206] In sum, the Louisiana Supreme Court has articulated that, in order to prevail on a defamation claim, a plaintiff must prove "that the defendant, with actual malice or other fault, published a false statement with defamatory words

---

[202] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[203] *Starr*, 978 So. 2d at 388; *Costello v. Hardy*, 03-1146, at 12 (La.1/21/04), 864 So. 2d 129, 139.

[204] *Starr*, 978 So. 2d at 388; *Costello*, 864 So. 2d at 139 (citing *Fitzgerald v. Tucker*, 98-2313, at 10 (La. 6/29/99), 737 So.2d 706, 715; *Trentecosta v. Beck*, 96-2388, at 10 (La. 10/21/97), 703 So. 2d 552, 559; *Sassone v. Elder*, 626 So. 2d 345, 350 (La. 1993).

[205] *Bell v. Rogers*, 29,757 (La. App. 2 Cir. 8/20/97), 698 So. 2d 749, 753 (citing *Brannan v. Wyeth Laboratories, Inc.,* 526 So.2d 1101, 1105 (La.1988); *Kosmitis v. Bailey*, 28,585 (La. App. 2 Cir. 12/20/96), 685 So. 2d 1177, 1179); *See Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196, 198 (La. 1980) ("To maintain an action in defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury."); *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La. App. 2 Cir. 6/22/01), 792 So. 2d 832, 835 ("The five essential elements of defamation are defamatory words, publication, falsity, malice, and resulting injury."). Several Louisiana courts consider only four elements for the tort of defamation, although the four element approach is substantively the same as the five element articulation for defamation. *See Kennedy v. Sheriff of E. Baton Rouge*, No. 05-1418 (La. 7/10/06), 935 So. 2d 669, 674 (considering only four elements for defamation: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."); *Wood v. Del Giorno*, 2006-1612 (La. App. 4 Cir. 12/19/07), 974 So. 2d 95, 98 (same).

[206] *Kennedy*, 935 So. 2d at 674; *Wood*, 974 So. 2d at 98; *see generally* 12 William E. Crawford, Louisiana Civil Law Treatise: Tort Law § 17.4 at 312 (2000).

which caused plaintiff damages."[207] If even one of the required elements of the defamation tort is lacking, the cause of action fails.[208] Nonetheless, even if a plaintiff makes a *prima facie* showing of the essential elements of a defamation claim, a defendant may prevail by showing either that: (1) the statement was true, as truth is an absolute defense to defamation claims under Louisiana law; or (2) that the statements were protected by an absolute or qualified privilege.[209]

With regard to the first element of a defamation claim, *i.e.* whether the communication consisted of "defamatory words," the Louisiana Supreme Court has held that "[t]he question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court."[210] To make this determination, courts must consider whether a listener "could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense."[211] In other words, the legal issue to be decided by the Court is whether a particular statement is "*objectively* capable of having a defamatory meaning . . . considering the statement as a whole, the context in which it was made, and the effect it is reasonably intended to produce in the mind of the average listener."[212] If the Court concludes in the plaintiff's favor that a statement is capable of a defamatory meaning, then

---

[207] *Costello*, 864 So.2d at 139; *Trentecosta*, 703 So. 2d at 559 (quoting *Sassone*, 626 So.2d at 350).

[208] *Costello*, 864 So.2d at 140; *Douglas v. Thomas*, 31,470, at 3 (La. App. 2 Cir. 2/24/99), 728 So. 2d 560, 562; *Kosmitis v. Bailey*, 28,585, at 2 (La. App. 2 Cir. 12/20/96), 685 So. 2d 1177, 1180.

[209] *Costello*, 864 So.2d at 141 (citing *Doe v. Grant*, 01-0175, at 9 (La. App. 4 Cir. 1/29/03), 839 So. 2d 408, 416; *Arledge v. Hendricks*, 30,588, 4 (La. App. 2 Cir. 6/26/98), 715 So.2d 135, 139); *Wood*, 974 So. 2d at 98 ("Even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified."); *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La. App. 2 Cir. 6/22/01), 792 So. 2d 832, 835 ("Truth is an absolute defense to the action for defamation.").

[210] *Costello*, 864 So. 2d at 140 (citing *Sassone*, 626 So. 2d at 352).

[211] *Id.*

[212] *Kosmitis*, 685 So. 2d at 1180 (citing *Sassone*, 626 So. 2d at 352; *Taylor*, 519 So. 2d at 306) (emphasis in original).

the question of whether the "communication capable of a defamatory meaning was so understood by the recipient" is one for the factfinder.[213] That is, if the Court finds that a "particular statement is *objectively* capable of having a defamatory meaning," then "the actual recipient's *subjective* understanding or perception of the communication as defamatory becomes a factual issue for the jury."[214] By contrast, if the Court determines that the words at issue are not objectively capable of having a defamatory meaning, then the plaintiff's claim is not actionable and may be dismissed on a defendant's summary judgment.[215]

Louisiana courts have determined that a statement is "defamatory" if it "tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise exposes the person to contempt or ridicule."[216] "Words which convey an element of personal disgrace, dishonesty, or disrepute are defamatory."[217] In Louisiana, defamatory words have also traditionally been defined into two categories: those that are "defamatory *per se*" and those that are simply "susceptible of a defamatory meaning."[218] "Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory *per se*."[219] When a plaintiff proves (1) the communication of words that are defamatory *per se* and (2) publication

---

[213] *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99), 737 So. 2d 706, 720 n.7 (citing *Sassone*, 626 So. 2d at 352 n. 9).

[214] *Kosmitis*, 685 So. 2d at 1180.

[215] *Id.*

[216] *Kennedy*, 935 So. 2d at 674.

[217] *Costello*, 864 So.2d at 140 (citing *Fitzgerald*, 737 So.2d at 716).

[218] *Id.* (citing *Lemeshewsky v. Dumaine*, 464 So. 2d 973, 975 (La. App. 4 Cir. 1985)).

[219] *Id.* (citing *Kosmitis*, 685 So. 2d at 1180; *Lemeshewsky*, 464 So. 2d at 975).

of those words to a third party other than the plaintiff (*i.e.* the first and second elements of a defamation claim), then the last elements of (3) falsity, (4) malice (or fault), and (5) injury are presumed.[220] Thus, in cases where the plaintiff demonstrates that the words published were defamatory *per se*, the burden shifts to the defendant to rebut the presumed elements.[221] When the words are not defamatory *per se*, the plaintiff must prove each element of the defamation tort.[222] Moreover, as stated *supra*, even if the plaintiff can make a *prima facie* showing of all essential elements of his defamation claim, "recovery may be precluded if the defendant shows either that the statement was true, or that it was protected by a privilege, absolute or qualified."[223]

## C.  *Analysis*

In his motion, Hoffman moves for entry of partial summary judgment on seven issues pursuant to Federal Rule of Civil Procedure 56.[224] In particular, Hoffman argues that there are no disputed issues of material fact with regard to the following: (1) Bailey's email constitutes defamation *per se*; (2) Bailey's email was published on November 24, 2012, to Jessica Richardson, an employee of SHPO; (3) Bailey made the defamatory statements without any reasonable grounds for believing the statement was true; (4) the statements in Bailey's email are false; (5) Bailey is not entitled to any conditional privilege; (6) because Bailey's email constitutes defamation *per se*, the Hoffmans "suffered presumed injury to reputation and pain, humiliation and suffering;" and

---

[220] *Kennedy*, 935 So. 2d at 675 (citations omitted); *see Costello*, 864 So. 2d at 140.

[221] *Id.*

[222] *Costello*, 864 So.2d at 140.

[223] *Id.* at 141 (citing *Doe v. Grant*, 01-0175 (La. App. 4 Cir. 1/29/03), 839 So. 2d 408, 416; *Arledge v. Hendricks*, 30,588 (La. App. 2 Cir. 6/26/98), 715 So. 2d 135, 139).

[224] Rec. Doc. 139-2 at 5.

(7) the Hoffmans are entitled to recover punitive or exemplary damages pursuant to Louisiana Civil Code article 3546.[225]

As a preliminary matter, the Court notes that both parties agree that the allegedly defamatory comments by Bailey were written in one email to SHPO, and neither party disputes the content of Bailey's communication.[226] However, in Hoffman's motion for partial summary judgment,[227] his complaint,[228] his sworn affidavit,[229] and throughout his filings to this Court,[230] Hoffman mischaracterizes the allegedly defamatory statements made by Bailey and the entire basis for this defamation action. For example, in the instant motion, Hoffman implies that Bailey directly stated that "Peter and Susan Hoffman are the architects not of a building, but of a major economic fraud," and that this was the "false statement[] of fact" that constitutes defamation.[231] Hoffman also regularly breaks apart one sentence of Bailey's email and treats each fragment as separate and distinct allegations against the Hoffmans, such as Bailey's supposedly direct statement that "[t]he

---

[225] *Id.* at 5–7.

[226] *See* Rec. Doc. 1-3 at 30 (the Hoffmans attaching exhibit "G" to their complaint of Bailey's email to SHPO); Rec. Doc. 3-2 at 15 (Bailey pointing to the same exhibit in his motion to dismiss).

[227] Rec. Doc. 139-2 at 6 (stating that Bailey's statements include "Peter and Susan Hoffman are the architects not of a building, but of a major economic fraud.").

[228] *See* Rec. Doc. 1 at 4 (implying that Bailey stated that the "application made by the Hoffmans are fraudulent . . .").

[229] *See* Rec. Doc. 11-1 at 3 (Hoffman asserting that Bailey stated "among other things that 'Peter and Susan Hoffman are the architects . . . of a major economic fraud' and that the 'application made by the Hoffmans are fraudulent . . .").

[230] *See, e.g.,* Rec. Doc. 11 at 18 (the Hoffmans stating in their opposition to Bailey's motion to dismiss that the "charges" that the Hoffmans "are the architects . . . of a major economic fraud" are defamation *per se*); Rec. Doc. 53 at 2 (the Hoffmans contending that Bailey made the "malicious defamatory statements, without any reasonable basis, that 'Peter and Susan are the architects . . . of a major economic fraud,' and that the 'applications [for rehabilitation credits] made by the Hoffmans are fraudulent'"); Rec. Doc. 81 at 4 (same).

[231] Rec. Doc. 139-2 at 6, 22.

amounts claimed [in the application] were probably not spent" and that " . . . some or all of the funds used to renovate the property were improperly diverted . . . ."[232]

However, it appears that Hoffman is relying on incomplete quotations of Bailey's statements to SHPO. In fact, based on the undisputed evidence of the email that both parties have relied on, Bailey actually said that he had read that the Hoffmans "have applied for rehabilitation tax credits on 807 Esplanade" and "included them as revenue in accounts filed with the SEC," and that "[t]his *appears to contradict* other *evidence* which *strongly indicates* that Peter Hoffman and Susan Hoffman are the architects not of a building, but of a major economic fraud. . . ."[233] Bailey then provides a link for further information, and the remainder of the email asks: "*Who should I write to with the evidence* I personally have *that indicates* that all the applications made by the Hoffmans are fraudulent, that the amounts claimed were probably not spent, and that some or all of the funds used to renovate the property were improperly diverted from SAP Plc by way of a transfer to a related party within 2 years of a SAP Plc becoming insolvent?"[234]

---

[232] *Id.* at 22–23.

[233] Rec. Doc. 1-3 at 30 (emphasis added).

[234] *Id.* (emphasis added). The email states in full:

Dear Jessica

I was interested to read that Peter and Susan Hoffman have applied for rehabilitation tax credits on 807 Esplanade, and have included them as revenue in accounts filed with the SEC. This appears to contradict other evidence which strongly indicates that Peter Hoffman and Susan Hoffman are the architects not of a building, but of a major economic fraud.

http://stock-bb.com/seven-arts-pictures-plc-pink-sapx/ has several discussions on this matter.

Who should I write to with the evidence I personally have that indicates that all the applications made by the Hoffmans are fraudulent, that the amounts claimed were probably not spent, and that some or all of the funds used to renovate the property were improperly diverted from SAP Plc by way of a transfer to a related party within 2 years of a SAP Plc becoming insolvent?

David J Bailey

Hoffman has pointed to no authority, nor has the Court found any, that supports his implicit argument in his motion for partial summary judgment that a defamation action may be asserted based on incomplete and partial quotations of the allegedly defamatory statements at issue. In fact, Louisiana courts have made clear that, in deciding whether a statement was defamatory, "the publication must be read as a whole."[235] Therefore, the Court will consider Bailey's complete statements in the only email to SHPO pointed to by the Hoffmans or Bailey when deciding each of Hoffman's arguments in support of his motion for summary judgment.[236]

### 1. Hoffman's objections to Bailey's Declaration

First, the Court notes that in Hoffman's reply memorandum, he makes a number of evidentiary objections to Bailey's opposition and attached exhibits to Bailey's Statement of Contested Material Facts.[237] Hoffman argues that all of Bailey's "unverified and unauthenticated Exhibits [attached] to his Statement of Contested Material Facts" should be excluded.[238] Hoffman also objects to Bailey's Declaration "in its entirety as it is unexecuted and not sworn before a taker of oaths."[239] Accordingly, Hoffman lists over 150 paragraphs in Bailey's Declaration to which Hoffman objects by listing one word objections of foundation, relevancy, lack of personal knowledge, improper opinion, hearsay, authentication, and/or best evidence grounds.[240]

---

[235] *Weatherall v. Dep't of Health & Human Res.*, 432 So. 2d 988, 993 (La. App. 1 Cir. 1983) (citing *Kihneman v. Humble Oil & Refining Company*, 312 F.Supp. 34 (E.D.La.1970); *Otero v. Ewing*, 162 La. 453, 110 So. 648 (1926); *Tate v. Nicholson Publishing Company*, 122 La. 472, 47 So. 774 (1908)).

[236] Rec. Doc. 1-3 at 30.

[237] Rec. Doc. 178 at 10.

[238] *Id.*

[239] *Id.*

[240] *Id.* at 10–12.

Pursuant to Federal Rule of Civil Procedure 56(c)(1), a party asserting that a fact is genuinely disputed must support this assertion by, in relevant part, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(2) further provides that a party "may object that the material cited to support or dispute a fact *cannot be presented in a form* that would be admissible in evidence."[241] Moreover, Rule 56(c)(4) requires that an affidavit or declaration used to support or oppose a motion must be: (1) made on personal knowledge; (2) set out facts that would be admissible in evidence; and (3) show that the affiant or declarant is competent to testify on the matters stated.[242]

Here, in one sentence, Hoffman appears to first object to all 21 of Bailey's exhibits attached to his opposition memorandum as "unverified" and "unauthenticated."[243] However, Hoffman offers no explanation or argument as to why his objections have merit, and he fails to cite to any case law or Federal Rule of Evidence that demonstrates that this evidence "*cannot be presented in a form* that would be admissible in evidence," *i.e.* that these exhibits cannot be verified and authenticated at trial.[244] It is not the Court's responsibility to comb through the record to determine the basis for Hoffman's cursory objections or to make arguments on his behalf. Accordingly, the Court denies Hoffman's objections to all of Bailey's exhibits at this time.

---

[241] Fed. R. Civ. P. 56(c)(2) (emphasis added).

[242] Fed. R. Civ. P. 56(c)(4) (emphasis added).

[243] Rec. Doc. 178 at 10.

[244] Fed. R. Civ. P. 56(c)(2) (emphasis added).

Second, Hoffman objects to the "entirety" of Bailey's Declaration, as Hoffman argues it is "unexecuted" and "not sworn before a taker of oaths."[245] Hoffman further argues that Bailey "is not subject to Louisiana law regarding statements made under penalty of perjury and his statements can be evidence only if sworn."[246] However, Hoffman offers no authority and fails to point to any Federal Rule of Evidence to support this contention, nor does Hoffman provide any reason as to why the evidence of a defendant's declaration "*cannot be presented in a form* that would be admissible in evidence," such as by Bailey testifying.[247] Hoffman also does not cite to any authority to support his argument that Bailey, who is a defendant facing Hoffman's civil action in this Court under Louisiana law, is "not subject to Louisiana law" for statements made in court filings, or that Bailey's declaration, made "under penalty of perjury" and filed in a federal court,[248] can only be evidence if sworn. As the Fifth Circuit noted in *Stewart v. Guzman*, unsworn declarations made in writing and "under the penalty of perjury" may be admissible evidence.[249] Additionally, Rule 56(c)(4) only requires that a declaration used to oppose a motion must be: (1) made on personal knowledge; (2) set out facts that would be admissible in evidence; and (3) show that the affiant or declarant is competent to testify on the matters stated.[250] Here, Hoffman offers no sound argument as to why Bailey's Declaration fails to meet these requirements or would

---

[245] Rec. Doc. 178 at 10.

[246] *Id.*

[247] Fed. R. Civ. P. 56(c)(2) (emphasis added).

[248] Rec. Doc. 164-9 at 43.

[249] 555 F. App'x 425, 432 (5th Cir. 2014); *see Simmons v. Kolodzik*, 159 F.3d 1357 (5th Cir. 1998) (. . . Simmons submitted an unsworn declaration made under penalty of perjury. Simmons' unsworn declaration was competent summary-judgment evidence."); *Johnson v. Certain Underwriters at Lloyd's London*, No. 09-2495, 2009 WL 3232006, at *4 (E.D. La. Oct. 2, 2009) (Berrigan, J.) (rejecting argument that an unsworn declaration should not be considered because it was not notarized).

[250] Fed. R. Civ. P. 56(c)(4) (emphasis added).

otherwise be inadmissible. Accordingly, the Court denies Hoffman's objection to Bailey's Declaration in its entirety.

Third, Hoffman asserts one-word objections to over 150 paragraphs in Bailey's Declaration, such as "relevance," "best evidence," "improper opinion," "not authenticated," "hearsay," and "no foundation."[251] However, Hoffman again offers no explanation or argument as to why his objections have merit, and he fails to cite to any case law or Federal Rule of Evidence that demonstrates that this evidence "*cannot be presented in a form* that would be admissible in evidence."[252] Indeed, most of Hoffman's one-word objections apply to a large range of paragraphs and assertions in Bailey's Declaration without specifying which particular statements Hoffman is objecting to.[253] For example Hoffman objects wholesale to Paragraphs 117 through 130, in which Bailey discusses his personal knowledge of potential "theft" by Hoffman of money the company owed in taxes to the United Kingdom, on "relevance," "hearsay," "best evidence," and "not authenticated" grounds without specifying which statements in the three-pages worth of paragraphs they apply to.[254] As stated *supra*, it is not the Court's responsibility to comb through the record to determine the basis for Hoffman's cursory objections, identify which paragraphs Hoffman might be objecting to, or make arguments on his behalf. Accordingly, without more information, the Court denies Hoffman's broad objections to 150 paragraphs of Bailey's Declaration.

---

[251] Rec. Doc. 178 at 11–12.

[252] Fed. R. Civ. P. 56(c)(2); *see Silver Dream, L.L.C. v. 3MC, Inc.*, No. 10-3658, 2011 WL 4007385, at *4 (E.D. La. Sept. 8, 2011) (Feldman, J.) (noting that while the defendants' objections of hearsay to the plaintiff's particular evidence opposing summary judgment may have merit, it could become admissible at trial through alternate testimony).

[253] Rec. Doc. 178 at 11.

[254] *See id.*; Rec. Doc. 164-9 at 23–25.

## 2. *Defamatory per se*

In his motion, Hoffman first argues that Bailey's statements in his email to SHPO were defamatory *per se* as a matter of law such that granting summary judgment on the issue in Hoffman's favor is proper.[255] Hoffman contends that Bailey's statements are defamatory *per se* because "the words, in accusing the Hoffmans of committing fraud, by their very nature implicate criminal conduct and tend to injure a person's personal and professional reputation."[256] Hoffman also appears to rely on the fact that this Court, in denying Bailey's motion to dismiss pursuant to Rule 12(b)(6), determined that Bailey's statements were defamatory *per se* after accepting all allegations in the Hoffmans' complaint as true.[257] In Hoffman's reply brief, Hoffman further contends that Bailey did not address Hoffman's argument that Bailey's words were defamatory *per se*, and therefore Hoffman presumes that the issue was "stipulated and conceded" by Bailey.[258] In response, Bailey asserts that he did not concede that Bailey's communication is defamatory *per se*.[259] Bailey avers that he has always argued that his email to SHPO was not defamation, "because it was true and because Bailey had a conditional privilege to make the statements in the email."[260] Bailey also points out that this Court concluded in its Order denying Bailey's motion to dismiss that Bailey's statements were defamatory *per se*, and thus Bailey contends that the burden shifts to Bailey to establish "the truth of the statements."[261]

---

[255] Rec. Doc. 139-2 at 5.

[256] *Id.*

[257] *Id.* at 13 (citing Rec. Doc. 87).

[258] Rec. Doc. 178 at 3.

[259] Rec. Doc. 193 at 1.

[260] *Id.* at 2.

[261] *Id.*

As a preliminary matter, the Court notes that both parties misinterpret the effect of the Court's Order denying a motion to dismiss on the Court's analysis here on a motion for summary judgment. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[262] On a motion to dismiss, asserted claims *are liberally construed in favor of the claimant*, and all facts pleaded are taken as true.[263] As the Court noted in its Order on the motion to dismiss,[264] the Hoffmans' complaint directly alleges that Bailey's email to SHPO constitutes defamation *per se*, and the Hoffmans further allege that Bailey directly accused the Hoffmans of being "architects . . . of a major economic fraud" and that the "application made by the Hoffmans are fraudulent . . . ."[265] Liberally construing the complaint in favor of the Hoffmans and accepting their well-pleaded allegations as true as required on a Rule 12(b)(6) motion, the Court found for the purposes of analyzing the motion to dismiss that "[s]uch an allegation is considered defamatory *per se* as the words, in accusing the Hoffmans of committing a fraud, by their very nature implicate criminal conduct and tend to injure a person's personal or professional reputation."[266] Thus, under the motion to dismiss standard, the Court determined that the elements of falsity and malice (or fault) are presumed and that Bailey bore the burden of rebutting that adverse presumption.[267]

---

[262] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[263] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[264] *See* Rec. Doc. 87.

[265] *See* Rec. Doc. 1 at 4, 6.

[266] Rec. Doc. 87 at 20 (citations omitted).

[267] *Id.*

Here, however, Hoffman is moving for summary judgment, and thus, unlike on a motion to dismiss brought by the defendant, Hoffman bears the initial burden of showing that there is a genuine absence of disputed fact on the issues for which he requests summary judgment.[268] Likewise, in considering Hoffman's motion for summary judgment, the Court does not liberally construe the facts in Hoffman's favor, such as the words in Bailey's email, or utilize the forgiving standard of whether Hoffman's allegations "state a claim for relief that is plausible on its face."[269] Accordingly, to the extent that Hoffman argues that the issue of whether Bailey's words were defamatory *per se* was conclusively decided in the Court's Order denying Bailey's motion to dismiss pursuant to Rule 12(b)(6), the Court finds such an argument inaccurate and therefore unpersuasive.

As stated *supra*, the five elements of defamation under Louisiana law are: "(1) defamatory words; (2) publication to a person other than the one defamed; (3) falsity; (4) malice; and (5) resulting injury."[270] With regard to the first element, under Louisiana law, "defamatory words have traditionally been divided into two categories: those that are defamatory *per se* and those that are susceptible of a defamatory meaning."[271] Words which "expressly or implicitly accuse another of

---

[268] *Celotex*, 477 U.S. at 323.

[269] *Ashcroft*, 556 U.S. at 678.

[270] *Bell v. Rogers*, 29,757 (La. App. 2 Cir. 8/20/97), 698 So. 2d 749, 753 (citing *Brannan v. Wyeth Laboratories, Inc.,* 526 So. 2d 1101, 1105 (La. 1988); *Kosmitis v. Bailey*, 28,585 (La. App. 2 Cir. 12/20/96); 685 So. 2d 1177, 1179); *See Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196, 198 (La. 1980) ("To maintain an action in defamation, the following elements must be shown: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury."); *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La. App. 2 Cir. 6/22/01), 792 So. 2d 832, 835 ("The five essential elements of defamation are defamatory words, publication, falsity, malice, and resulting injury."). As stated *supra*, several Louisiana courts consider only four elements for the tort of defamation, although the four element approach is substantively the same as the five element articulation for defamation. *See Kennedy v. Sheriff of E. Baton Rouge*, No. 05-1418 (La. 7/10/06); 935 So. 2d 669, 674 (considering only four elements for defamation: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."); *Wood v. Del Giorno*, 2006-1612 (La. App. 4 Cir. 12/19/07), 974 So. 2d 95, 98 (same).

[271] *Kennedy*, 935 So. 2d at 674–75.

criminal conduct, or which by their very nature tend to injure one's personal or professional reputation," without considering extrinsic facts or circumstances, are considered defamatory *per se*.[272] Typically, Louisiana courts first consider the "threshold issue" of whether words published to a third party were either "defamatory" or "defamatory *per se*" in order to determine which party bears the burden of proving or rebutting the remaining three elements.[273]

In his reply brief in opposition to Hoffman's motion, Bailey states that he "has admitted that he sent the email to the SHPO and he has admitted that the email says what it says."[274] Thus, it is undisputed that Bailey's email to SHPO states that the Hoffmans' application for rehabilitation tax credits and its inclusion of those tax credits as "revenue in accounts filed with the SEC . . . *appears* to *contradict other evidence* which strongly *indicates* that Peter Hoffman and Susan Hoffman are the architects not of a building, but of a major economic fraud."[275] Bailey also asked in the email: "*Who should I write to* with *the evidence* I personally have that *indicates* that all the applications made by the Hoffmans are fraudulent, that the amounts claimed were probably not spent, and that some or all of the funds used to renovate the property were improperly diverted from SAP Plc by way of a transfer to a related party within 2 years of a SAP Plc becoming insolvent?"[276]

---

[272] *Id.* (citing *Cangelosi v. Schwegmann Brothers Giant Super Markets*, 390 So.2d 196, 198 (La. 1980)); *Costello*, 864 So. 2d at 140.

[273] *Costello*, 864 So. 2d at 141–42 ("Having established these initial elements-publication of words that are defamatory but not defamatory per se-it remained the burden of plaintiffs-in-reconvention to prove the elements of falsity, malice (or fault) and injury.").

[274] Rec. Doc. 193 at 2.

[275] Rec. Doc. 1-3 at 30 (emphasis added).

[276] *Id.* (emphasis added).

Based on the evidence presented by Hoffman, the Court cannot conclude as a matter of law that Bailey's statements in his email to SHPO were defamatory *per se*, *i.e.* that Bailey expressly or implicitly accused Hoffman of *criminal conduct* or that the statements *by their very nature* tend to injure Hoffman's personal or professional reputation.[277] The Court notes that Hoffman has not pointed to any statements in Bailey's email that reference any criminal statute or directly accuses the Hoffmans of committing criminal activity or violating criminal law. Rather, the Court notes that Bailey's email is written using circumspect language such as "appears to contradict," and is limited only to informing SHPO that Bailey had "evidence" which he believed "indicates" or "strongly indicates" a number of things about the Hoffmans' applications for tax credits, and asking to whom he should send such evidence.[278] Although Bailey's email does inform the recipient that Bailey believes the evidence indicates that the Hoffmans are the architects of a "major economic fraud" and that their applications were "fraudulent," Hoffman has not shown that this establishes that Bailey implicitly or explicitly accused the Hoffmans of *criminal conduct* as a matter of law, as opposed to possible civil or administrative concerns Bailey could be raising, or that these words "by their very nature" tend to injure Hoffman's personal or professional reputation, as opposed to merely constituting traditional defamatory words under the circumstances, an issue which Hoffman has not requested summary judgment on.

Thus, this case is distinguishable from such cases as *Kennedy v. Sheriff of East Baton Rouge*, where the Louisiana Supreme Court found that restaurant employees who directly called law enforcement to accuse a patron of using a counterfeit one-hundred dollar bill was considered

---

[277] *Kennedy*, 935 So. 2d at 674–75.

[278] *See* Rec. Doc. 135 at 30.

defamatory *per se*.[279] Here, Hoffman himself argues that SHPO, Bailey's intended recipient of his email, does not enforce criminal laws or have a law enforcement function, and Hoffman has not shown that Bailey directly or implicitly accused the Hoffmans of conducting *criminal* activity. By contrast, this case is more analogous to *Wood v. Del Giorno*.[280] There, the Louisiana Fourth Circuit Court of Appeal upheld a Louisiana trial court's granting of a defendant's motion for summary judgment, in which the court found that the defendant's allegations that plaintiff was "an absolute fraud" and "a liar" made while they were on-air guests of a radio show could not be considered defamatory or defamatory *per se*.[281] The Louisiana Fourth Circuit noted that the words, which did not refer to any criminal offense, did not necessarily imply that the plaintiff was engaged in criminal activity in the minds of an ordinary listener and thus were not defamatory *per se*, and that while the remarks were "rude and insulting," they did not have a defamatory meaning.[282] Here, while Bailey's statements that he had "evidence" that "indicates" that Hoffman was the architect of a "major economic fraud" could be considered "rude and insulting" or constitute defamatory words generally, it cannot be said that, as a matter of law, they accused Hoffman of criminal conduct such that they were defamatory *per se*.

Accordingly, the Court finds that Hoffman has not presented sufficient evidence to establish that the statements in Bailey's email were defamatory *per se* as a matter of law. Hoffman has not shown that Bailey's email was either explicitly or implicitly accusing Hoffman of criminal conduct, or that Bailey's statements to a state agency that he had "evidence" which "indicates"

---

[279] *Kennedy*, 935 So. 2d at 675.

[280] 2006-1612 (La. App. 4 Cir. 12/19/07); 974 So. 2d 95, 99.

[281] *Id.*

[282] *Id.* at 99–100.

certain things about the Hoffmans "by their very nature tend to injure one's personal or professional reputation" such that Hoffman is entitled to summary judgment that the words used in Bailey's email were defamatory *per se*.[283]

Moreover, the Court notes that Hoffman has also failed to point to any authority that granting summary judgment on the threshold question of whether Bailey's email was defamatory *per se*, which only establishes which party bears the burden to prove or rebut the elements of falsity and malice, is proper on a motion for summary judgment. Therefore, at this time, the Court denies Hoffman's motion to the extent that Hoffman argues Bailey's statements were defamatory *per se* as a matter of law.

Nonetheless, the Court notes that, even if it were to find that Bailey's statements were defamatory *per se* as a matter of law, the effect of such a finding would be simply to shift the burden to Bailey to rebut the presumed elements of falsity and malice (or fault). As the Court determines *infra*, even if the burden shifts to Bailey on this motion for summary judgment, Bailey has presented sufficient evidence to rebut both the presumed elements of falsity and malice. Moreover, the Court finds *infra* that Bailey has presented sufficient evidence in this motion that his statements were true, an absolute defense to a defamation claim under Louisiana law,[284] and that he was entitled to a conditional privileged when making those statements, either of which would be sufficient to defeat Hoffman's ultimate defamation claim.

### 3.    *Publication*

Next, Hoffman argues that there are no genuine issues of material fact with regard to the fact that Bailey published his email to Jessica Richardson, an employee of SHPO, on November

---

[283] *See Kennedy*, 935 So. 2d at 674–75.

[284] *Wyatt v. Elcom of Louisiana, Inc.*, 34,786 (La. App. 2 Cir. 6/22/01); 792 So. 2d 832, 835 ("Truth is an absolute defense to the action for defamation.").

24, 2012. In response, Bailey states that he "has admitted that he sent the email to the SHPO and he has admitted that the email says what it says."[285] As stated *supra*, one element of a defamation claim under Louisiana law is the "unprivileged publication to a third party."[286] Accordingly, the Court finds that there are no genuine issues of material fact with respect to the fact Bailey's email was published to a third party. Therefore, the Court grants Hoffman's motion to the extent he request summary judgment on the fact that Bailey published his email to a third party containing the allegedly defamatory statements. However, the Court notes that it finds *infra* that Hoffman has not established that the publication was "unprivileged" as a matter of law.

### 4.    *Fault*

Next, Hoffman argues that it is undisputed that Bailey made his allegedly defamatory statements "without any reasonable grounds for believing the statement was true," *i.e.* the "fault" element of Hoffman's defamation claim.[287] The Louisiana Supreme Court has held that the third element of a defamation action is "fault (negligence or greater) on the part of the publisher."[288] Courts also refer to the fault requirement as "malice, actual or implied." That is, "[m]alice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation," *i.e.* negligence.[289] As stated *supra*, in defamation *per se* cases, fault is presumed, but may be rebutted by the defendant.[290]

---

[285] Rec. Doc. 193 at 2.

[286] *See Kennedy*, 935 So. 2d at 674–75.

[287] Rec. Doc. 139-2 at 6.

[288] *See Kennedy*, 935 So. 2d at 674.

[289] *Costello*, 864 So.2d at 143.

[290] *Id.* at 139.

First, the Court notes that Hoffman argues that, as a result of the fact that Hoffman's Request for Admissions have been deemed admitted by Bailey for his failure to timely respond, Bailey has conceded the issue of fault.[291] In particular, Hoffman points to Request for Admission Number 3, which states: "Please admit that the qualified historic rehabilitation expenses by SAPLA in connection with the rehabilitation of the Project are set forth in the Audit Report of Silva, Gurtner and Abnez ('Silva Firm') dated June 30, 2012 ('Audit Report') attached as Exhibit 'D' to the Complaint."[292] However, as this Court determined in its Order affirming the Magistrate Judge's Order denying Bailey's motion to withdraw his admissions, Hoffman's assertion in the instant motion that Bailey's deemed admission on Request for Admission number 3 means Bailey has admitted fault is a "blatant misrepresentation of the admission."[293] As the Court noted, Request for Admission Number 3 is vague, and only asks Bailey to admit that the Audit Report sets forth "qualified historic rehabilitation expenses;" it does not ask, as Hoffman seems to imply, that Bailey admit that the expenditures were "legitimate."[294] The Audit Report provides a list of what it represents are "qualified expenditures," but it does not prove that the expenses were in fact legitimate or that these expenses were actually incurred by the Hoffmans.[295] Thus, Bailey's admission that the document states a particular thing does not in and of itself concede the inference that Hoffman seeks to establish.[296] The Court also noted that there was no evidence presented that Bailey prepared the Audit Report, and neither party has argued that Bailey had any personal

---

[291] Rec. Doc. 201 at 1.

[292] Rec. Doc. 157-4 at 2.

[293] Rec. Doc. 219 at 14.

[294] *Id.*

[295] *Id.*

[296] *Id.*

knowledge to admit or deny that the report is accurate.[297] Accordingly, the Court finds that Admission Number 3 does not prove Bailey's "fault" as a matter of law or preclude Bailey from contesting the "fault" element with contradicting evidence.[298]

Second, the Court also notes that Hoffman asserts that satisfying the negligence standard is not a necessary element in this case.[299] Hoffman points out that the case law establishing negligence as a minimum requirement for fault in defamation cases is rooted in constitutional protections under the First and Fourteenth Amendments.[300] However, Hoffman argues that Judge Zainey previously determined that Bailey, as a citizen of the United Kingdom, is not entitled to First Amendment rights.[301] Thus, according to Hoffman, he does not need to prove negligence, although he notes that it is presumed in a defamation *per se* case.[302]

The Court finds Hoffman's argument that the negligence standard does not apply here unavailing. First, defamation is a quasi-offense actionable under Louisiana Civil Code article 2315.[303] Article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose *fault* it happened to repair it."[304] Indeed, Louisiana courts have recognized

---

[297] *Id.* at 15.

[298] *Id.*

[299] Rec. Doc. 139-2 at 14.

[300] *Id.*

[301] *Id.*

[302] *Id.*

[303] *See Costello*, 864 So. 2d at 140 n.10 (*Frito-Lay, Inc. v. WAPCO Constructors, Inc.*, 520 F. Supp. 186, 189 (M.D. La. 1981) (citing *Vicknair v. Daily States Pub. Co.*, 153 La. 677, 96 So. 529 (1923); *Wilson v. Capital City Press*, 315 So.2d 393 (La.App. 3 Cir. 1975)).

[304] La. Civ. Code art. 2315 (emphasis added).

defamations actions under article 2315 since at least 1840,[305] and they have consistently held that a "necessary" element of establishing a defamation cause of action is fault, "negligence or greater," or "malice."[306] By contrast, Hoffman has not pointed to any authority that Louisiana courts omit the "fault" requirement for defamation actions against non-citizen defendants.

Second, the case cited by Hoffman, *Kennedy v. Sheriff of East Baton Rouge*, considered more than just the First Amendment in coming to its decision that the negligence standard should apply to all cases involving private figure plaintiffs, including those in matters of public concern, such as reporting suspected criminal activity.[307] There, the Louisiana Supreme Court noted that the United States Supreme Court previously determined that the First and Fourteenth Amendments require at least a minimum liability standard of negligence for defamation actions against media defendants, and found that this rationale would apply to non-media defendants as well.[308]

However, in addition, the Louisiana Supreme Court also determined that the "adoption of a negligence standard promotes simplicity and consistency in the law of defamation, at least insofar as private individuals are concerned."[309] The court went on to note that it adopted the negligence standard for actions by private individuals involving matters of private concern, and that "[a]dopting the same standard of liability for private individuals respecting matters of public

---

[305] *See Costello*, 864 So. 2d at 140 n.10 (noting that since "at least 1840," defamation has been recognized in Louisiana as a quasi-offense under article 2315).

[306] *See, e.g.*, *Trentecosta v. Beck*, 96-2388 (La. 10/21/97), 703 So. 2d 552, 559 (holding that the four elements "necessary" to establish a defamation claim include "fault (negligence or greater) on the part of the publisher"); *Cangelosi v. Schwegmann Bros. Giant Super Markets*, 390 So. 2d 196, 198 (La. 1980) (holding that, in relevant part, the element of "malice, actual or implied," "must be shown" to maintain a defamation action"); *Vicknair v. Daily States Pub. Co.*, 153 La. 677, 681, 96 So. 529, 530 (1923) (stating that it is "necessary" to show "'a fault' on the part of a defendant" to bring a libel suit); *Covington v. Roberson*, 111 La. 326, 335, 35 So. 586, 590 (1903) (determining that in a slander action, "malice is the essence, and it must be proved, in order that plaintiff may recover").

[307] *Kennedy*, 935 So. 2d at 680.

[308] *Id.* at 679.

[309] *Id.* at 680.

concern simplifies the law in what has, admittedly, become a complex area."[310] Moreover, the court cited to the Restatement (Second) of Torts § 580B, which also provides for a standard of negligence for defamation actions involving private persons.[311] While Hoffman argues that the First Amendment considerations in *Kennedy* would not apply here, he does not address the Louisiana Supreme Court's other considerations in *Kennedy* regarding simplicity and uniformity in the law of defamation for private individuals or the guidance of the Restatement (Second) of Torts, both of which would weigh in favor of applying the negligence standard here. Therefore, in sum, the Court's finds that Hoffman's argument that the necessary element of "fault" should not apply here is unpersuasive. Accordingly, the Court will consider whether summary judgment on this element is proper.

In his motion, Hoffman argues that, because he contends this is a defamation *per se* case, negligence is presumed.[312] Moreover, Hoffman avers that negligence is established by, among other pieces of evidence: (1) his own testimony that Bailey had "personal animus" towards Hoffman; (2) that Bailey accused Susan Hoffman in his allegedly defamatory statements despite having never met or spoken with her; (3) that Bailey is deemed to have admitted that the rehabilitation of the 807 Esplanade Property occurred, that the "before" and "after" photos are accurate, that the Compilation Report "set[s] forth" the expenses incurred by SAP Plc in connection with the renovation, and that the 807 Esplanade Property was certified as having met the historic rehabilitation standards; and (4) that Bailey did not have access to the documents relied on by the auditors who produced the Compilation Report in 2012, well after Bailey left SAP Plc

---

[310] *Id.*

[311] *Id.* at 681 (Restatement (Second) Of Torts § 580B).

[312] Rec. Doc. 139-2 at 14.

in 2009.[313] In sum, Hoffman argues that this evidence shows that "Bailey's negligence is not a fact subject to material dispute."[314]

In response, Bailey points to numerous pieces of evidence that he had when making the allegedly defamatory statements, which he asserts proves his statements that he had "evidence" which "indicates" certain things about the Hoffmans were true, and therefore that the statements were not negligently made.[315] Among other things, Bailey points out that he was a "qualified" and "highly experienced forensic accountant" with significant experience investigating fraud.[316] Bailey points out that he "knew from documents in his possession" that the Hoffmans claimed that amounts spent on the 807 Esplanade Property prior to December 2009 were not actually spent and that funds were diverted or moved in a "fraudulent 'circular transfer.'"[317] For example, Bailey points to a series of memos on tax credits for the 807 Esplanade Property that he contends he helped prepare that he avers demonstrates he had knowledge of these issues,[318] as well as memos that he allegedly drafted each time he discovered Hoffman's allegedly false expenditure records and "circular transactions."[319] Bailey asserts that he consulted with legal counsel and public authorities in the United Kingdom before sending his email to SHPO.[320] Bailey also stated in his Declaration that he worked at SAP Plc in 2009 and continued to track Hoffman's public activity

---

[313] *Id.* at 14–15.

[314] *Id.* at 18.

[315] Rec. Doc. 193 at 1–2.

[316] *Id.* at 3.

[317] Rec. Doc. 164-9 at 2.

[318] *Id.* at 14.

[319] *Id.* at 18–19.

[320] *See* Rec. Doc. 193 at 3–4.

through 2012, and that he had knowledge that the amounts allegedly spent on the rehabilitation prior to December 2009 were "substantially the same amounts" that the Hoffmans claim were spent in 2012.[321] For example, Bailey points to public statements in 2012 by Hoffman regarding the costs of the rehabilitation of the 807 Esplanade Property and to multiple memos drafted on the tax credits in 2009 that he claims conflicted with the numbers publicly stated by Hoffman.[322]

Based on the foregoing, the Court finds that there are genuine issues of material fact on the issue of fault that precludes summary judgment on the element of fault. Even assuming that Bailey's words were defamatory *per se* and that the burden shifts to Bailey to rebut the presumed element of fault, Bailey has pointed to significant evidence to show that he acted on reasonable grounds for believing the statement was true.[323] In addition to finding that Bailey has presented sufficient evidence to create a disputed issue of material fact on the element of fault, the Court also finds that Bailey has presented sufficient evidence on this motion that his statements were true, an absolute defense to a defamation claim under Louisiana law.[324] Accordingly, the Court denies Hoffman's motion to the extent that it requests summary judgment on the element of fault in his defamation claim.

### 5. *Falsity*

Hoffman also argues that there are no genuine issues of material fact disputing that the statements in Bailey's email are "false statements of fact."[325] Hoffman contends that the element

---

[321] Rec. Doc. 164-9 at 2–3.

[322] *Id.* at 33–34; rec. doc. 165-15 at 35–42.

[323] *Costello*, 864 So.2d at 143.

[324] *Wyatt*, 792 So. 2d at 835.

[325] Rec. Doc. 139-2 at 22.

of falsity is presumed in defamation *per se* cases.[326] Nonetheless, Hoffman asserts that the evidence he has presented, particularly the issuance of the Certifications and the Compilation Report, prove the falsity of Bailey's statements.[327]

In response, Bailey argues that his statements were true, and he points to the same evidence discussed *supra*.[328] Based on the same analysis, the Court finds that there are genuine issues of material fact on the issue of falsity that precludes summary judgment. Even assuming that the burden shifts to Bailey to rebut the falsity element, Bailey has pointed to significant evidence to do so. Moreover, the Court again notes that, under Louisiana law, truth is an absolute defense to a defamation claim, and Bailey has presented sufficient evidence to create a disputed issue of material fact that it was true that he had "evidence" which he believed "indicates" a number of things about the Hoffmans' tax credit applications. Accordingly, the Court denies Hoffman's motion to the extent that it requests summary judgment on the essential element of falsity in his defamation claim.

### 5.    *Conditional Privilege*

Next, Hoffman argues that summary judgment is proper on the issue of conditional privilege.[329] In particular, Hoffman contends that there are no disputed issues of material fact that Bailey is not entitled to either: (1) the common interest privilege; or (2) the public interest privilege.[330] Hoffman also asserts that Bailey's affirmative pleading in his Answer that he is

---

[326] *Id.*

[327] *Id.* at 22–23.

[328] Rec. Doc. 193 at 1–4.

[329] Rec. Doc. 139-2 at 6.

[330] *Id.*

"entitled to the benefit of the doctrine of privilege/conditional privilege with respect to his notice to government officials of the State of Louisiana as to fraudulent tax credit filings which are the subject of federal grand jury indictments against Peter and Susan Hoffman in the Hoffman Felony Action" is insufficient to raise the defense of conditional privilege.[331] However, Hoffman fails to point to any authority that the affirmative defense of conditional privilege must be pleaded with even more specificity than what Bailey has offered.[332] Nor does Hoffman address how Bailey's detailed pleading of "privilege/conditional privilege" otherwise violates Federal Rule of Civil Procedure 8's requirement that a party must "affirmatively state any avoidance or affirmative defense."[333] Accordingly, the Court finds Hoffman's argument that the Court should not consider Bailey's affirmative defense of privilege unpersuasive. Therefore, the Court will proceed to address the parties' arguments regarding both privileges in turn.

### i.    Common interest privilege

Hoffman contends that Bailey is not entitled to the "common interest" or "duty to speak" conditional privilege.[334] According to Hoffman, this privilege only arises in cases "in which the person communicating has an interest or in respect to which he had a duty."[335] Hoffman asserts that this privilege applies only to communications with "appropriate persons within the employer's

---

[331] Rec. Doc. 139-2 at 19. The Court notes that in this motion Hoffman points out that there was a pending motion before the Magistrate Judge filed by Hoffman to, *inter alia*, strike Bailey's Answer and the affirmative defenses listed therein. However, that motion was denied by the Magistrate Judge to the extent that it requested striking Bailey's Answer. *See* Rec. Docs. 131, 138.

[332] *Id.*

[333] Fed. R. Civ. P. 8(c).

[334] Rec. Doc. 139-2 at 19.

[335] *Id.* (citing *Bradford v. Judson*, 44,092 (La. App. 2 Cir. 5/6/09), 12 So. 3d 974, 977; *Roux v. Pflueger*, 2009-0009 (La. App. 4 Cir. 7/8/09), 16 So. 3d 590, 593; *Ruffin v. Wal-Mart Stores, Inc.*, 2001-0613 (La. App. 1 Cir. 5/10/02), 818 So. 2d 965, 967).

walls, concerning allegations of conduct by an employee that bears on the employee's interest."[336]

Here, Hoffman argues that Bailey is not entitled to the common interest privilege because Bailey had no "duty" to report the alleged fraud that occurred long after Bailey stopped working at SAP Plc in 2009.[337] Rather, Hoffman avers that Bailey had a duty in his Employment Agreement to not disclose confidential information that he learned in the course of his employment.[338] Moreover, Hoffman alleges that Bailey had no interest in the filing for historic tax credits, as they were filed by a different legal entity than SAP Plc and had no effect on Bailey's former duties at SAP Plc.[339]

In opposition, Bailey asserts in his Declaration that as a qualified chartered accountant and former employee of Sap Plc, he had a duty to report "what he knew to be fraudulent activity by the [Hoffmans]."[340] Bailey avers that he consulted with legal counsel in the United Kingdom and was advised that the "defects, discrepancies, reporting issues, diversions, and thefts that he discovered during his employment with the company and after he was employed, were considered to be sufficiently serious, and sufficiently well documented by reference to the company's own books and records, or by information available in the public domain, for Mr. Bailey to have a professional obligation, and a legal duty, to report his suspicions to the tax authorities, company regulators, and criminal authorities in the United Kingdom."[341] Moreover, Bailey alleges that "because of the international nature of the matters discovered," Bailey had a professional and

---

[336] *Id.* (citing *Kelly v. W. Cash & Carry Bldg. Materials Store*, 99-0102 (La. App. 4 Cir. 10/20/99), 745 So. 2d 743, 748).

[337] *Id.* at 20.

[338] *Id.*

[339] *Id.*

[340] Rec. Doc. 193 at 3.

[341] *Id.* at 3–4.

personal duty to report such suspicions to authorities in the United States as well.[342] Bailey contends that he was under this same duty when he learned of the allegedly fraudulent activity of the Hoffmans with respect to the historic tax credits in 2012.[343] Therefore, Bailey argues that because he had a duty to report the fraudulent activity relating to the 807 Esplanade Property to the government agency to whom the Hoffmans were applying for tax credits, he had a conditional privilege to make such a report.[344] Bailey asserts that any question of abuse of a conditional privilege is a question of fact for the factfinder.[345]

Early Louisiana courts have held that an otherwise defamatory publication is protected by a qualified conditional privilege if: (1) made in good faith; (2) on "any subject matter in which the person communicating has an interest or in reference to which he has a duty"; and (3) "to a person having a corresponding interest or duty."[346] A statement is made in good faith when "when it is made with reasonable grounds for believing it to be true."[347] "This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate."[348] The Louisiana Supreme Court subsequently adopted a

---

[342] *Id.* at 4.

[343] *Id.*

[344] *Id.* at 5.

[345] *Id.*

[346] *Ruffin*, 818 So. 2d at 967 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730)

[347] *Id.* (citing *Harrison v. Uniroyal, Inc.*, 366 So.2d 983 (La. App. 1 Cir. 1978)).

[348] *Harrison v. Uniroyal, Inc.*, 366 So. 2d 983, 985–86 (La. Ct. App. 1978) (citing *Toomer v. Breaux*, 146 So.2d 723, 725 (La. App. 3rd Cir. 1962)).

simplified two-step approach to the analysis of conditional privilege. First, courts must look to the "attending circumstances of a communication" to determine if a qualified privilege arises.[349] The second step is to determine whether the privilege has been abused, which "requires that the grounds for abuse-malice or lack of good faith-be examined."[350] "While the first step is generally determined by the court as a matter of law, the second step of determining abuse of a conditional privilege or malice is generally a fact question for the jury '[u]nless only one conclusion can be drawn from the evidence.'"[351]

Based on the foregoing, the Court finds that there are genuine issues of material fact precluding summary judgment on the issue of Bailey's "common interest" conditional privilege. Bailey has pointed to sufficient evidence to demonstrate that: (1) his communications were made in good faith; (2) that he had an interest or duty to communicate his concerns regarding the Hoffman's fraudulent tax activity to the proper authorities; and (3) that he made his communications to the appropriate governmental authorities with a corresponding interest or duty in the allegedly fraudulent historic tax credits. That is, Bailey has presented sufficient evidence to demonstrate that the "attending circumstances" of Bailey's communication gives rise to a qualified privilege. Moreover, the Court determined *supra* that there are disputed issues of fact regarding the element of "fault" and "negligence," as Bailey has pointed to sufficient evidence to support his contention that he acted on reasonable grounds when making these statements. Likewise, the Court finds that Bailey has presented sufficient evidence to create a genuine dispute of material fact with

---

[349] *Kennedy*, 935 So. 2d at 682.

[350] *Id.*

[351] *Id.* (citations omitted).

regard to whether the privilege was abused by Bailey, *i.e.* the second prong of the qualified privilege analysis.

The Court notes that Hoffman contends that there is no duty for former employees to report allegedly fraudulent activity of their former employers.[352] However, Hoffman fails to cite to any relevant authority to support his proposition. While Hoffman cites to a Louisiana Fourth Circuit decision, *Kelly v. West Cash & Carry Building Materials Store*, that case is inapplicable here.[353] In *Kelly*, the Louisiana Fourth Circuit only held that *an employer* who *indiscriminately* publishes defamatory information to every employee, including those "who had not even the remotest claim to a qualified privilege," could not claim qualified privilege.[354] Here, Bailey has pointed to sufficient evidence that SHPO had a relevant duty or interest with respect to the allegedly fraudulent tax activity by the Hoffmans. Moreover, the Court notes that the conditional privilege extends to subject matters to which the speaker has either a duty *or* an interest in; here, Bailey has pointed to sufficient evidence that, as a qualified chartered accountant and a former employee of SAP Plc, he had both a duty and interest in reporting this information to the appropriate authorities. Accordingly, the Court denies Hoffman's motion to the extent it requests summary judgment on Bailey's claim of a "common interest" qualified privilege.

### ii.    *Public interest privilege*

Hoffman also contends that Bailey is not entitled to a "public interest" conditional privilege.[355] Hoffman asserts that this privilege only applies to communications "to law

---

[352] Rec. Doc. 139-2 at 19.

[353] *Kelly*, 745 So. 2d at 748.

[354] *Id.*

[355] Rec. Doc. 139-2 at 20.

enforcement officers of expected criminal authorities" in support of "prevention of crimes and apprehension of criminals."[356] Hoffman further points out that the Restatement (Second) of Torts § 598 states that this privilege is applicable when a recognized interest of the public is "in danger," such as in apprehending criminals, while the Louisiana Supreme Court has emphasized it is to prevent criminals from being able to "escape detention" or further endanger others.[357] According to Hoffman, this is inapplicable here, as Bailey knew the Hoffmans were already under investigation.[358] Moreover, Hoffman points to his Declaration where he confirmed that SHPO has no "law enforcement officers."[359] Hoffman also argues that the public interest privilege should only apply to a "victim" or "percipient witness," and not "volunteers."[360]

In response, Bailey argues that the deposition of a SHPO employee shows that the Inspector General of the State of Louisiana, Tom Boulton, was in contact with SHPO and investigating the Hoffman's historic tax credit application prior to Bailey's email.[361] Bailey also points out that his email was forwarded from SHPO to the Inspector General, and that the Inspector General contacted Bailey in response to his email.[362] Moreover, Bailey argues that the *Kennedy* decision, the case cited by Hoffman regarding privileges for reports to law enforcement officers, defined the elements of conditional privilege as: (1) good faith; (2) an interest to be upheld; and (3) "a

---

[356] *Id.* (citing *Kennedy*, 935 So. 2d at 683).

[357] *Id.* at 21.

[358] *Id.*

[359] *Id.*

[360] *Id.*

[361] Rec. Doc. 193 at 2.

[362] *Id.*

statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only."[363]

In *Kennedy v. Sheriff of East Baton Rouge*, the Louisiana Supreme Court opined that it is "impossible to reduce the scope of a conditional or qualified privilege to any precise formula."[364] "Nevertheless, the elements of the conditional privilege have been described as 'good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only.'"[365] The *Kennedy* court went on to cite to the Restatement (Second) of Torts §598's to determine that the public interest privilege arises "if the circumstances induce a correct or reasonable belief that: (a) there is information that affects a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true."[366] The *Kennedy* court opined that Louisiana courts have "recognized that the public has an interest in possible criminal activity being brought to the attention of the proper authorities, and have extended a qualified privilege to remarks made in good faith."[367] Indeed, the court noted that "[i]t would be self-defeating for society to impose civil liability on a citizen for inaccurately reporting criminal conduct with no

---

[363] *Id.*

[364] *Kennedy*, 935 So. 2d at 681.

[365] *Id.*

[366] *Id.* at 682

[367] *Id.* at 683 (citing *Simon v. Variety Wholesalers, Inc.*, 2000-0452 (La. App. 1 Cir. 5/11/01), 788 So.2d 544, *writ denied,* 01-2371 (La.11/16/01), 802 So.2d 617; *Jones v. Wesley*, 424 So.2d 1109(La. App. 1 Cir.1982); *Crump v. Crump*, 393 So.2d 337 (La. App. 1 Cir.1980)).

intent to mislead. If the risks to the citizen are too high, a fertile field for criminal suppression will have disappeared."[368]

Based on the foregoing, the Court finds that there are genuine issues of material fact precluding summary judgment on the issue of Bailey's "public interest" conditional privilege. Bailey has pointed to sufficient evidence to demonstrate that: (1) his communications were made in good faith; (2) that the information regarding the Hoffmans' allegedly fraudulent tax activity involved a sufficiently important public interest; and (3) that he communicated the information to a "a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true."[369] That is, Bailey has presented sufficient evidence to demonstrate that the "attending circumstances" of Bailey's communication regarding fraudulent tax credits to the government entity tasked with administering those tax credits gives rise to a qualified privilege. Moreover, as the Court noted *supra*, the Court finds that Bailey has presented sufficient evidence to create a disputed issue of material fact regarding whether the privilege was abused in making these statements. Accordingly, the Court denies Hoffman's motion to the extent it requests summary judgment on Bailey's claim of a "public interest" qualified privilege.

### 7.  *Presumed Damages*

Next, Hoffman asserts that, because he argues this is a defamation *per se* case, injury to reputation as well as humiliation and suffering are presumed.[370] Hoffman states that the amount

---

[368] *Id.*

[369] *Kennedy*, 935 So. 2d at 681–82.

[370] Rec. Doc. 139-2 at 23.

will be determined by this Court during a bench trial.[371] However, Hoffman claims that he suffered presumed damages to his reputation and pain and suffering of $250,000, as he is "widely known in the motion picture business and the Bailey Defamation was a painful humiliation with state officials . . . [that] dramatically affected his business in Los Angeles and with his principal lender."[372]

In response, Bailey asserts that he has "not conceded the issue that the Hoffmans suffered presumed injury (i.e. general damages) to reputation and pain, humiliation and suffering."[373] Bailey argues that any damage to Hoffman's reputation "was caused by [his] own acts of being convicted of felony charges."[374] Moreover, Bailey points out that his email was not circulated in the public, and that it was only forwarded to the Inspector General who was already investigating the Hoffmans for their alleged criminal activity.[375] Thus, Bailey argues that Hoffman has not shown that Bailey's single email to SHPO caused any damage to the Hoffmans "over and above being convicted felons, which was not caused by Bailey, but by themselves."[376]

First, the Court notes that, even assuming this is a defamation *per se* case as Hoffman repeatedly argues, damages "must be proved by competent evidence, [although] there is no need to establish the actual pecuniary value of the injury suffered."[377] Additionally, a plaintiff must

---

[371] *Id.*

[372] *Id.*

[373] Rec. Doc. 193 at 5.

[374] *Id.*

[375] *Id.*

[376] *Id.* at 5–6.

[377] *Cluse v. H & E Equip. Servs., Inc.*, 2009-574 (La. App. 3 Cir. 3/31/10), 34 So. 3d 959, 971; *see also Arnaud v. Dies*, 2016-642 (La. App. 3 Cir. 12/7/16), 208 So. 3d 1017, 1026 (citing *Lege v. White*, 619 So. 2d 190, 191 (La. App. 3 Cir. 1993)); *Trahan v. Ritterman*, 368 So. 2d 181, 185 (La. App. 1 Cir. 1979)

show that the defamatory statements were a "substantial factor in cause the harm."[378]  Here, both parties point to conflicting evidence with regard to the extent of the damages Hoffman is alleged to have suffered due to Bailey's allegedly defamatory statements. Accordingly, the Court finds that genuine issues of material fact exist precluding summary judgment on the issue of damages. Therefore, to the extent that Hoffman requests summary judgment on his request for $250,000 in damages, the Court denies the motion.

### 8.      *Punitive Damages*

Finally, Hoffman moves for summary judgment on the issue of whether the Hoffmans are entitled to recover punitive or exemplary damages pursuant to Louisiana Civil Code article 3546.[379] Louisiana Civil Code article 3546 provides that punitive damages may not be awarded unless authorized by: (1) "the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled;" or (2) "the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled."

Hoffman argues that he is entitled to punitive damages under Article 3546 because the injury to him occurred in California, where he is domiciled and a resident, and the injurious conduct occurred in England, where Bailey is domiciled and a resident.[380] Hoffman asserts that punitive damages for defamation are permitted by California law if the defamation is made with

---

[378] *Costello*, 864 So. 2d at 141(citing *Kosmitis*, 685 So.2d at 1180; *Taylor v. Town of Arcadia*, 519 So.2d 303, 306 (La. App. 2 Cir. 1988)).

[379] Rec. Doc. 139-2 at 7.

[380] *Id.* at 24.

malice.[381] Likewise, Hoffman avers that punitive damages for defamation are permitted by English law, at the discretion of the court, if the decision to publish "was made knowing it to be wrong or reckless as to whether it was wrong."[382]

In opposition, Bailey argues that Hoffman is not entitled to punitive damages under Article 3546.[383] In particular, Bailey asserts that both the alleged injury and the allegedly injurious conduct occurred in Louisiana, which does not authorize punitive damages.[384] According to Bailey, the domiciles of Hoffman and Bailey are not sufficient to authorize punitive damages in Louisiana, which has a general public policy against the award of punitive damages.[385] Furthermore, Bailey argues that the Hoffmans did not plead for punitive damages in their complaint, and it is too late to request punitive damages for the first time.[386]

As a preliminary matter, the Court notes that the Hoffmans' complaint included a request for "any and all damages sustained by plaintiffs as proved by trial."[387] Bailey has pointed to no authority that Hoffman's complaint insufficiently pleaded a request for punitive damages, and Bailey has not filed an appropriate motion to dismiss or strike such a request. However, based on the foregoing, the Court finds that there are genuine issues of material fact precluding summary judgment on the issue of punitive damages. Both parties have pointed to conflicting evidence as to where the injurious conduct and the injury allegedly took place. Therefore, to the extent that

---

[381] *Id.* (citing Cal. Civ. Code § 48(c)).

[382] *Id.* at 24–25 (citing *Broome v. Cassell*, [1972] AC 1027, 1079 C-E, 1088 G-1089A, 1094 C-E, 1101 D-G, 1121 , 1130 D-F; *John v. Mirror Group Newspaper Ltd.*, [1997] QB 586, 618 G-619A).

[383] Rec. Doc. 193 at 6.

[384] *Id.*

[385] *Id.*

[386] *Id.* at 7.

[387] Rec. Doc. 1 at 8.

Hoffman requests summary judgment on his request for punitive damages, the Court denies the motion.

## IV. Conclusion

Based on the foregoing, the Court determines that summary judgment in Hoffman's favor is proper on the issue of publication to a third party, as Bailey has admitted to publishing his allegedly defamatory statements to SHPO. However, based on the foregoing, the Court finds that both parties have pointed to conflicting evidence such that there are genuine issues of material fact precluding summary judgment on the remaining issues raised by Hoffman, including: (1) if Bailey's words were defamatory *per se*; (2) fault; (3) falsity; (4) conditional privilege; (5) presumed damages; and (6) punitive damages. Accordingly,

**IT IS HEREBY ORDERED** that Hoffman's "Motion for Partial Summary Judgment (FRCP 56)" is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted in part to the extent that the element of publication to a third party is admitted. The motion is denied in part as to the remaining issues raised by Hoffman, including: (1) if Bailey's words were defamatory *per se*; (2) fault; (3) falsity; (4) conditional privilege; (5) presumed damages; and (6) punitive damages.

**NEW ORLEANS, LOUISIANA,** this _20th_ day of June, 2017.

_Nannette Jolivette Brown_

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**